## Loan Company *versus* Elliott's Ex'rs and Cragg.

An agreement in writing was executed by two persons, by which they jointly agreed with a corporation, that one of them should endeavor to collect and secure certain claims of the corporation and pay to it the proceeds, or else return the notes, or such of them as cannot be collected; but part of the proceeds collected were paid by the receiver *to his co-promisor:* the latter thereby became the *principal* debtor, and an action on the agreement against his executors and the surviving promisor will be sustained. The joining of the latter, who afterwards became a bankrupt, though an irregularity, will be disregarded, in order to reach the justice of the case.

ERROR to the District Court, *Philadelphia.*  ⟨illegible⟩

This was an action in case, brought to June term 1840, and *alias* summons to December term 1842, by the Philadelphia Loan Company *vs.* Yard and Moore, executors of the will of John Elliott, deceased, and Dennis Cragg. It was founded on an agreement in writing, which is hereafter stated, dated 8th February, 1838, signed by Dennis Cragg and John Elliott.

The plaintiffs loaned Dennis Cragg, in 1837, $4500, on his note, and on certain other promissory notes, which he deposited with plaintiffs as collaterals.

February 8th, 1838, Elliott and Cragg made an agreement with the plaintiffs, by which they covenanted that if the plaintiffs would return said collaterals to Cragg, that he, Cragg, would collect them and pay the plaintiffs the said $4500, with interest.

The plaintiffs delivered the collaterals to Cragg, who kept them, and did not pay any part of the $4500.

Elliott died, leaving a will, which was proved, and letters testamentary granted thereon to the defendants.

This action was against Elliott's executors and Cragg.

The declaration contained all the common counts and a count on the agreement. Judgment was entered in this suit against Cragg, for want of a plea.

The executors plead the general issue, and, also, that the agreement was made *jointly* by Elliott and Cragg, and that at the time of the commencement of this suit the said John Elliott was dead, and the said Dennis Cragg survived him, &c., and that, therefore, no cause of action survived against Elliott's executors.

The plaintiffs replied that it was *not* made jointly by Elliott and Cragg, and that an action did survive against Elliott's representatives.

The petition of Cragg, for the benefit of the acts of bankruptcy, was filed February 1st, 1843, and he was discharged on 27th May, 1843.

The case came on for trial April 17th, 1848. Plaintiffs' counsel gave in evidence three promissory notes of Cragg to the Philadelphia Loan Company; one dated May 17th, 1837, for $900; one

[Loan Company *v.* Elliott's Executors and Cragg.]

dated June 3d, for $450; one dated June 6th, for $450; and one dated November 27th, for $2700; amounting in all to $4500.

They then offered to give in evidence a written agreement, and the schedule thereto, by said Elliott and Cragg to said Loan Company, dated February 8, 1838; to which the defendants objected, and the court refused to permit the plaintiff to give the said agreement in evidence; to which the said plaintiffs excepted.

The said plaintiffs then offered to give in evidence three letters of the said Cragg to the Loan Company; and, also, the record of a suit in this court to September term 1841, No. 836, by plaintiffs *vs.* Cragg, on said notes, in which they obtained judgment January 22, 1842, for $5703.78; and, also, a certified abstract of the record of the discharge of said Cragg as a bankrupt, by the District Court of the United States for the Eastern District of Pennsylvania, on the 27th of May, 1843; also, a certified copy of the will of the said Elliott, and a certified copy of the settlement of the account of the executors of his will; also, offered to prove that these notes were not paid, and that Cragg is dead; that Cragg *acknowledged* he had collected large sums of money on the notes named in said schedule, *all of which he had applied to the payment of said Elliott's notes and other liabilities;* that Cragg's wife was the only child of Elliott; and it was arranged and agreed upon between Elliott and Cragg that Elliott's liability to the Loan Company, in this agreement for Cragg, should go in lieu or in the place of any devise he had intended to make Cragg by will; and that Elliott's executors knew this—had acknowledged it, and said that the plaintiff's claim ought to be paid.

To the giving in evidence all of which, the defendant objected. The judge overruled the plaintiff's offer, and the plaintiff's counsel excepted. The plaintiff closed; and, on motion of the defendant's attorney, the court entered a nonsuit. The plaintiff's counsel obtained a rule to strike it off, with leave to open the judgments against Cragg, and enter a *nol. pros.* as to him, he having been discharged under the bankrupt laws. The court subsequently refused to permit the nonsuit to be struck off.

The agreement, on which the plaintiff declared, was as follows:

This agreement, made the eighth day of February, 1838, between Dennis Cragg and John Elliott of the one part, and the Philadelphia Loan Company of the other part. Whereas Dennis Cragg, before mentioned, some time in the year 1837, deposited with the said Philadelphia Loan Company, as collateral security for moneys loaned to said Cragg, the following hereinafter described notes:

And whereas, the said Dennis Cragg is now about to proceed on a collecting tour, where the drawers of the hereinafter described notes reside, and is desirous of taking said notes from said company for the purpose of collecting them and securing their pay-

ment; now this agreement *witnesseth*, that the said Dennis Cragg and John Elliott covenant and agree to and with the said Philadelphia Loan company, that the said Cragg shall use his best endeavors to collect and to secure the payment of the said notes, and shall pay to the said company all and every sum or sums received thereon, until the whole amount due the said company for principal and interest shall be paid; or, in case of the impossibility of collecting said notes, shall return them, or such of them as cannot be collected, to said company.

Witness,                          (Signed) DENNIS CRAGG,
     P. E. JONES.                            JOHN ELLIOTT.

It was assigned for error:
That the judge erred in rejecting the plaintiff's evidence, and in entering a nonsuit; and, second, in not striking off the nonsuit, and in refusing to give the plaintiff leave as asked for.

The case was argued by *F. E. Brewster*, for plaintiff in error.— It was contended that the agreement by Cragg and Elliott with the Loan Company was joint and several. That it was offered to be proved that part of the money was applied by Cragg to liabilities of Elliott, and that Elliott was therefore liable; but, if he were only the surety of Cragg, he would be liable in equity: Cited Lang *v.* Keppele, 1 *Bin.* 123; Weaver *v.* Shryock, 6 *Ser. & R.* 266. Plaintiff first sued Cragg on his notes and obtained judgment, and afterwards brought suit on the agreement; that to reach Elliott's executors it was allowable, if not obligatory, to sue *all* the parties to the agreement.

*Budd*, for defendants in error.—The contract between the Loan Company and Cragg and Elliott, in which Elliott was surety, was *joint*, and not several, and, after Elliott's death, survived against Cragg alone; that the estate of Elliott was discharged; that there must be express words creating a 'several responsibility, in order to render parties separately responsible: *Chitty on Con.* 98; 13 *Ser. & R.* 289; 6 *id.* 262; 5 *Bacon's Ab.* Obligation, D. 4; 1 *Barr* 215; 2 *Wash. R.* 175; 2 *Mass.* 572; 2 *Watts* 204; 7 *Ser. & R.* 357; 5 *East* 261; 2 *Hen. & Mun.* 124. That the case of Lang *v.* Keppele, 1 *Bin.* 125, was a case of *partnership*, and was ruled on the principle that a contract by partners is *joint and several*.

The union of Cragg as a co-defendant with the executors of Elliott, was irregular: 5 *Watts* 339, Givin *v.* Albert; Serrill *v.* Denman, 3 *Pa. Law Jour.* No. 8, p. 379; *Ch. Pl.* 37. *Cragg's declarations* were not admissible to charge Elliott's executors.

There was no antecedent moral obligation on the part of Elliott to pay the plaintiffs. The Loan Company and Elliott do not ap-

[Loan Company *v.* Elliott's Executors and Cragg.]

pear to have been parties to any other agreement than the written contract, which was the real foundation of the plaintiff's action.

Whatever excellence there may be in *chancery* practice, it can be applied to the common law tribunals only by legislative authority.

*T. Sergeant,* in reply.—The debt as against Elliott *is a lien upon his real estate,* and that lien continues. He cited the act of 11th April, 1848 : *Acts of* 1848, p. 536. It is enacted, in section 3, that where a judgment shall be obtained against two or more co-partners, or joint or several obligors, promissors, or contractors, the death of one or more of the defendants shall not discharge his or their estate or estates, real or personal, from the payment thereof, but the same shall be payable by his executors, &c., as if the judgment had been several against the deceased alone.

He contended that the court should have heard the evidence to the point that the money was received by Elliott; and should have stricken off the nonsuit; that Cragg was trusted on the responsibility of Elliott.

The opinion of the court was delivered February 18, 1851, by

GIBSON, C. J.—When this court first declared equity to be part of the law of Pennsylvania, it had one of two things to do in order to carry its declaration out—either to assume the powers of a court of chancery, or to strain relief through common law forms, disregarding technical congruity when found to stand in the way of justice. Unfortunately, it attempted a middle course. By the help of fiction, the common law form of the record was measurably preserved, though often at the expense of right. The relief sometimes stopped short of complete justice, while the record did not indicate that there had been any relief at all. It was impossible to tell from the verdict in an action of covenant by a vendor, whether the jury had executed the contract or given damages for a breach of it.

Equitable jurisdiction was gradually assumed, but not always in subordination to technical forms. A plaintiff has been allowed to declare on a lost bond without a profert; a defendant has been allowed to plead matter of equitable defence specially; and many other departures from common law rule have been sanctioned. We have not yet gone so far as to disregard the form of the writ, count, or judgment; but why should we not do so when justice cries out for it, and there is no other way to appease her clamor? or why should we choose to give relief in handcuffs? From the moment the court departed in the least from technical form, there could be no stopping-place short of perfect and entire justice. That it had not come up to the exigence of the present case is because no such case had turned up. Were not the bankrupt debtor joined as a defendant in it with the executors of the dead one, the case would

[*Loan Company v. Elliott's Executors and Cragg.*]

be, in its equity and its form, the same as Lang *v.* Keppele, which was essentially a bill in equity, and in which the plaintiff was relieved as fully as a chancellor would have relieved him. The cause before us stood below in the shape of a common law action, and the court had one of three things to do—to strike the name of the bankrupt out of the declaration and writ for the sake of congruity, an amendment authorized neither by statute nor the common law; or to disregard the irregularity, and give judgment so as to reach, not the personal responsibility of the executors, but the testator's property; or to turn the plaintiff round to an action barred by the statute of limitations. The second was the preferable one.

The inflexibility of the forms of the common law was produced by the simplicity of its process. It allowed to an action but one writ, one declaration, one plea, one judgment, and one execution; and the parts were congruous as well as perfect. Branching was prevented by lopping. At the death of a joint plaintiff, the entire right of action went to the survivor; and the death of a joint defendant released his property, not for any merit in him, but for the inconvenience of complicating the process by bringing in his executor. The death of a defendant after judgment, did not discharge his land from the lien of it; and execution might be had of it after judgment on a special *scire facias.* That consequence was produced by the interpretation put on the statute of Westminster 2, which was held to give the creditor execution of the land had at the time of the judgment. To prevent an absolute failure of justice, equity interposes to subject the property of the decedent to execution if he were not a surety, and, consequently, not entitled to its sympathy for the hardship of his case. In the present case, there was no judgment in the decedent's lifetime; and, though a statute gave a lien on his property from the time of his death, it is safer to put the cause on the inherent power of a court of equity, exerted, not against the persons of the executors, but against the decedent's property. In point of equity, it stands as fair as did Lang *v.* Keppele. There the executor of a partner was allowed to be sued after the survivor had been pursued to bankruptcy: here the action is against, not only the executors, but the bankrupt also. In the first, the record exhibited a cause of action that might be recovered against the defendant at law: in the second, the cause of action could not be recovered against the defendants at law, but the impediment is not so great that it must overturn the most sacred principles of justice. The action is essentially a bill in equity, and the fashion of its drapery is surely not a matter of the first importance. If it were so, no common law action could be substituted for a bill in any case; and to sustain it in this instance, though irregular even as an action, requires this court to go only a step further than it has already gone. Cragg,

[Loan Company *v.* Elliott's Executors and Cragg.]

the bankrupt, was indebted to the plaintiff on notes secured by collaterals, which were returned to him on the security of the testator's guaranty that he would collect them and pay the plaintiff the avails.    He did collect them, but paid the avails in discharge of debts owing by the testator, who became, on the principle of the Bank of Pennsylvania *v.* Winger, 1 *Rawle* 295, a principal debtor. This is the case proposed to be proved, and the evidence of it ought to have been received.

Judgment reversed, and *venire facias de novo* awarded.