## Caldwell *versus* Hartupee & Co. for use.

A trust-mortgage was made to Caldwell to secure, amongst others, a debt due Hartupee, who owed a firm of which Caldwell was a partner. Hartupee gave an order on Caldwell in favor of Cuthbert; on presentation Caldwell refused to pay Cuthbert, saying he would pay Hartupee's debt to his firm from what he was entitled to under the mortgage. At the trial Caldwell's partner consented that the firm's claim might be set off to Hartupee's claim against Caldwell. *Held,* that the order was an equitable assignment to Cuthbert, and he might recover from Caldwell.

November 3d 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the District Court of *Allegheny county :* No. 210, to October and November Term 1870.

This was an action of assumpsit brought, August 21st 1869, by " Hartupee & Co., for the use of John Cuthbert, now for the use of John Morrow," against William A. Caldwell.

[Caldwell v. Hartupee.]

The circumstances were, that Henry T. Dexter, being the owner of the steamboat "Quickstep," which was largely in debt, made a trust-mortgage of the boat to the defendant and George W. Coffin as trustees to secure $15,000 for the benefit of creditors of the boat named in schedule annexed to the mortgage, amongst whom were the plaintiffs. The plaintiffs drew upon the defendant in favor of John Cuthbert for part of the money coming to them. The defendant declined to accept or pay the order on the ground that Hartupee & Co., were indebted to the firm of which he was a member. Cuthbert endorsed the draft to Morrow, for whose use the suit was brought. On the bond Caldwell's partner had consented that their debt might be set off.

The case was tried June 8th 1870, before Kirkpatrick, J.

The plaintiffs gave in evidence a trust-deed or mortgage, dated March 24th 1868, from Henry T. Dexter, owner of the steamboat "Quickstep," conveying the boat to William A. Caldwell (defendant) and George W. Coffin, for the consideration of $15,000. The deed recited that Dexter had bought the steamboat, and that it was liable for sundry debts which were liens upon it, "and the parties have agreed that the same shall be paid out of the proceeds of the sale;" and after specifying in a schedule the creditors of the vessel and the amounts due them, it provided that Dexter should pay $5000 in six months, and like amounts in twelve and sixteen months, and upon the payment of the $15,000 with interest, the deed should be void. For these sums Dexter gave his notes with interest.

The deed contained this stipulation :—

"And the payments aforesaid, as received by said trustees, shall be applied first to the payment of the creditors above named, excluding Morrow and Barnhill,—next, to the claim of said Morrow and Barnhill, and the balance to said D. W. C. Carroll, assignee of said Hartupee & Morrow, for the use of general creditors."

The amount of debts specified in schedule was $15,000 ; Morrow and Barnhill's debt was stated to be $2940, and "D. W. C. Carroll, assignee," as $5349.36. The notes of Dexter were paid to Caldwell at maturity. Before the deed of trust of Dexter to Caldwell, Hartupee & Co. had assigned to D. W. C. Carroll, who declined to accept the trust, and, as was admitted on the trial, that claim then belonged to Hartupee & Co.

The plaintiffs further gave in evidence the following draft :—

"Mr. W. A. Caldwell.

"Dear Sir : Please pay Mr. John Cuthbert fifteen hundred dollars out of the proceeds of the last note coming to us from the steamer Quickstep, with interest from date of said note.

"HARTUPEE & CO.

"Pitts., October 10th 1868.

[Caldwell *v*. Hartupee.]

" Endorsed :

" Mr. Caldwell : Please pay John Morrow the within money.

JOHN CUTHBERT."

Cuthbert testified that he presented the draft to Caldwell, who refused to accept it, saying that " Hartupee & Co. owed them that money, and he was going to apply it to pay that on their book account.". Witness presented the draft to Caldwell the day it bore date. " It was a good while afterwards that I transferred this order to John Morrow; the order was left with A. H. Miller, Esq., as collateral security for a debt for which I was bail; transferred to Morrow in August 10th 1869 ; at the time I transferred this order to John Morrow, he paid to Mr. Miller the debt for which I was bail, and for which this order was collateral."

It was admitted that Caldwell, as acting trustee, had paid on orders of Hartupee & Co. $3920.40, leaving a balance of about $1700 in his hands.

The defendant gave evidence as to his trouble, &c., as trustee ; also that he had refused to accept the draft in favor of Cuthbert, having in his hands at that time only about $30. Hartupee & Co. were then indebted to Caldwell & Brother, the defendant being one of the firm,—about $2581.62, with interest.

John Caldwell, a partner of the firm of Caldwell & Brother, testified that as a partner in the firm, he was willing that the defendant should appropriate the indebtedness of Hartupee & Co. to the firm as a set-off to the claim of the plaintiffs in this case against the defendant.

The court instructed the jury *pro formâ* to find for the plaintiffs, subject to the question reserved, which is stated in the verdict of the jury, to wit :—

" We find the amount in the hands of the defendant, W. A. Caldwell, to be $2278.96. We allow the trustees as compensation $375, which, deducted from the above amount, leaves a balance in his hands of $1903.96.

" We find the claim of this plaintiff this day, in principal and interest, to be $1698.75 ; and we find in his favor and against the defendant for that amount, viz., $1698.75, he having that amount in his hands, unless the court shall be of opinion that under all the evidence in this case the plaintiff is not entitled to recover ; and if the court shall be of opinion that the plaintiff is not entitled to recover, and that the defendant is entitled to set off the claim of Caldwell & Brother against Hartupee & Co., under the two notes given in evidence by the defendant, then verdict to be entered for the defendant, *non obstante veredicto*."

The court afterwards entered judgment for the plaintiff on the verdict, on the reserved question.

[Caldwell *v.* Hartupee.]

The defendant removed the case to the Supreme Court, and there assigned for error, the entering judgment for the plaintiff.

*John H. Hampton* (with whom was *Dalzell*), for plaintiff in error.—The debt due Caldwell & Brother by Hartupee & Co., could be set off against plaintiffs' claim on the consent of Caldwell's partner: Smith *v.* Myler, 10 Harris 36; Wrenshall *v.* Cook, 7 Watts 464; Tustin *v.* Cameron, 5 Whart. 379; Craig *v.* Henderson, 2 Barr 261; Solliday *v.* Bissey, 2 Jones 347; Relf *v.* Bk. of Mobile, 8 Harris 435; Ryall *v.* Rowles, 1 Ves. 348; Waln *v.* Bk. of N. America, 8 S. & R. 73; although this assent be given after action brought: Hart *v.* Porter, 5 S. & R. 201.

The use-plaintiff was bound to show affirmatively that he had given a valuable consideration: Prescott *v.* Prescott, 17 Johns. R. 284; Perkins *v.* Parker, 1 Mass. 117; Antrobus *v.* Smith, 12 Ves. 39; Sutton *v.* Lord Chatwood, 3 Merivale 289; Meek *v.* Kettlewell, 1 Hare 464; Kennedy *v.* Ware, 1 Barr 445; Mark *v.* Clark, 11 B. Monroe 44; Duval *v.* Wilson, 9 Barb. 202; Kennady *v.* Shepard, 2 Jones Eq. 224; Cox *v.* Sprigg, 6 Md. 274.

The order was not an assignment, because it undertook to transfer only a portion of the fund in Caldwell's hands: Mandeville *v.* Welch, 5 Wheat. 277.

*John Barton*, for defendants in error.—Caldwell's right to claim the set-off was acquired only on the day of trial, after other rights had intervened; it may therefore not be available: Smith *v.* Myler, 10 Harris 36.

The opinion of the court was delivered, May 13th 1872, by

READ, J.—On the 24th day of March 1868, Henry T. Dexter being the owner of a one-third interest in the steamboat "Quickstep," purchased the remaining two-thirds from Hartupee & Co., the then owners thereof, for $15,000, which, as the boat was in debt in that amount to various persons, and to secure the payment of the same, said Dexter made and executed a deed, dated the same day, for said boat to William A. Caldwell and George W. Coffin, in trust for her lien-creditors, a list of whom is given in said deed. The said $15,000 were to be paid to said trustees with interest from the date of the deed, in manner following, viz.: one promissory note for the sum of $5000, with interest, six months after this date, and two similar notes of the same amounts, payable respectively at 12 and 16 months after date. These notes were all paid at maturity.

The last on the list of creditors was D. W. C. Carroll, assignee, which, as the assignment was inoperative, he having declined to accept, was really Hartupee & Co., to whom it belonged, as was

[Caldwell *v.* Hartupee.]

admitted on the trial. The payments as received were to be applied first to the payment of the creditors above named, excluding Morrow and Barnhill, next to the claim of said Morrow and Barnhill, and the balance really to Hartupee & Co., who were creditors to the amount of $5349.36.

In April 1868, W. A. Caldwell, acting assignee, accepted and paid two orders, drawn by Hartupee & Co. against their interest, as creditors in said deed, amounting to $3920.40.

On the 10th October 1868, Hartupee & Co., being the owners, of the balance of the debt due them under the deed of trust, drew the following order on W. A. Caldwell:—

"Dear Sir: Please pay Mr. John Cuthbert $1500 out of the proceeds of the last note coming to us from the steamer 'Quickstep,' with interest from date of said note.

"Pittsburg, October 10th 1868.

"Hartupee & Co."

This order on the same day was taken by Cuthbert to Caldwell, one of the trustees, who refused to accept it, and told him Hartupee & Co. were indebted to his firm in a sum exceeding the amount coming to them under the trust deed, and he intended to appropriate whatever they might be entitled to, to the payment of that debt.

This order was an equitable assignment of so much of the money which Hartupee & Co. were entitled to receive from the trustees under the deed of trust out of the proceeds of the last note which they had the full power to make. The order was properly admitted in evidence by the court, and it was proved by Cuthbert that he went bail for Hartupee & Co. on a judgment held by A. H. Miller, Esq., and when it came due John Morrow raised and paid the money to Miller, and this order which had been given as collateral for the judgment was then assigned to John Morrow, who paid the money. It was, therefore, not simply an assignment, but an assignment for a valuable consideration, and John Morrow was entitled to receive the money. This suit was brought on the 21st August 1869, and was tried on the 9th June 1870, and in the course of it John Caldwell, Jr., a partner in the firm of Caldwell & Bro., was examined by the defendant, and two notes offered in evidence were shown witness. "I am willing," said he, "as a partner, that my brother, W. A. Caldwell, should use the amount of each note as an offset in this case against the claim of plaintiffs in this case against W. A. Caldwell; I am content he should so appropriate."

Under this state of facts the plaintiffs were entitled to the full amount of the order, with interest, and whatever balance remained

[Caldwell v. Hartupee.]

of Hartupee & Co.'s interest under the deed of trust belonged to the defendant under his offset of the two notes above stated.

This really practically answers Mandeville v. Welch, which was in a court of common law, and the same assignment would have been held good on the equity side of the same. In Pennsylvania, in the present liberal state of the law, as to equitable assignments, there can be no hesitation in recognising this assignment in a common-law form of action, and in saying in such a case it is not necessary to resort to a court of equity.

Judgment affirmed.