## Diamond Textile Machine Works, Inc., v. International Batting Mills.

*Assignment of part of claim against individual—Notice to debtor—Right of debtor to have issue framed to determine validity of assignment—Practice, C. P.*

An assignment of a part of a claim against an individual will be sustained, and on the assignment's being called to the attention of the court by the affidavit of defence, the court will make absolute a rule for judgment against the debtor (defendant in case at bar), and stay the execution for fifteen days, with leave to him to petition the court within that time for leave to pay into court the part of the claim assigned with interest and to frame an issue between the assignor (plaintiff in case at bar) and the assignee as to who is entitled thereto.

Rule for judgment for want of a sufficient affidavit of defence. C. P. No. 1, Phila. Co., Dec. T., 1924, No. 857.

*U. S. Koons*, for plaintiff; *Morris & Kirby*, for defendant.

*J. S. Clark*, for garnishee.

TAULANE, J., Dec. 30, 1925.—This is a rule for judgment for want of a sufficient affidavit of defence.

The plaintiff seeks to recover from the defendant commissions for selling machinery.

The agreement for commissions is in writing, and under its terms the commissions are payable to the plaintiff. The defendant denies liability on the ground that the commissions are not payable to the plaintiff alone, but jointly to the plaintiff and one A. J. Mellman.

The affidavit of defence sets up this defence, as follows: "Deponent is informed by one A. J. Mellman, believes and, therefore, avers, that the purchasers, A. Lippman and Louis Silverstein, trading as Camden Fibre Mills, were obtained as purchasers of the machinery from defendant by the said plaintiff and A. J. Mellman jointly; that in said transaction said A. J. Mellman and the plaintiff were working in joint enterprise; that the transactions and agreements with defendant relative to the said sale and payment of commissions, etc., were made with the defendant by the plaintiff (by and through one H. B. Lincoln, then and there duly authorized in that regard on behalf of the plaintiff and said A. J. Mellman); that any moneys due and payable by way of commission or otherwise, as result of said transaction and sale referred to and set forth in the plaintiff's statement of claim are due and payable to the parties with whom the defendant dealt and contracted, to wit, the plaintiff and said A. J. Mellman jointly; that the defendant is not obligated to or indebted directly or solely to the plaintiff for the moneys claimed in this proceeding."

It is not alleged that A. J. Mellman was either the principal or partner of the plaintiff; it is simply averred that they were working in "joint enterprise."

No one can sue for the breach of a contract who is not a party to the contract (Dicey on Parties to Actions, 2nd ed., 94; 1 Chitty on Pleadings, 2, and Kountz v. Holthouse, 85 Pa. 235, 237), except generally where the contract is made by an agent for an undisclosed principal or by a partner on behalf of his firm. Neither of these situations is present here.

The defendant has no right to insist that suit be brought in the joint names of the plaintiff and A. J. Mellman. The mere fact that the plaintiff and A. J. Mellman were engaged in "joint enterprise" in no way changes the contractual relations of the plaintiff and defendant. The arrangement between the plaintiff and A. J. Mellman was to share the commissions, and this amounted

to an assignment of one-half of the commissions to A. J. Mellman (Schwartz *v.* Tuchman, 205 N. W. Repr. (Mich.) 140). The defendant had notice of the assignment, but did not obligate himself to pay one-half of the commissions to A. J. Mellman.

The question for decision is whether the defendant is obliged to protect the interest of A. J. Mellman, a partial assignee, because if a debtor is under no such duty the rights of A. J. Mellman are no concern of the defendant and he should be obliged to pay the commissions in full to the plaintiff. No one would question that such is a debtor's duty if the assignment, instead of being partial, embraced the whole debt: Tritt *v.* Colwell, 31 Pa. 228, and North Penn Iron Co. *v.* International Lithoid Co., 217 Pa. 538.

It is true that an assignee of part of a chose in action cannot sue in the name of his assignor.

"A creditor," says Story, J., in Mandeville *v.* Welch, 5 Wheaton (U. S.), 277, "shall not be permitted to split up a single cause of action into many actions without the assent of his debtor, since it may subject him to embarrassments and responsibilities not contemplated in his original contract. He has a right to stand upon the singleness of his original contract and to decline any legal or equitable assignments by which it may be broken into fragments. When he undertakes to pay an integral sum to his creditor, it is no part of his contract that he shall be obliged to pay in fractions to any other persons."

From this rule some early Philadelphia cases (Fairgrieves *v.* Lehigh Navigation Co., 2 Phila. 182; McCaffery *v.* Cassidy, 3 Phila. 210, and Miller *v.* Insurance Co., 5 Phila. 12) and some rather recent cases elsewhere (Thiel *v.* John Week Lumber Co., 137 Wis. 272, and Gilman *v.* Raymond, 235 Mass. 284) have deduced the further rule that a debtor may ignore notice of a partial assignment and pay his creditor in full. Thus, in Fairgrieves *v.* Lehigh Navigation Co., 2 Phila. 182, Hare, J., said: "It is true that both law and equity permit and aid the transfer of a cause of action from one hand to another when assigned as a whole and not in parcels or fragments, because this merely shifts the right of the creditor, without varying or impairing the position of the debtor, and simply compels him to make payment to the assignee instead of the assignor. But the case is widely different when a partial assignment seeks to charge the debtor with the burden of ascertaining the respective shares or equities of the assignor and assignee and paying each the proportion due to him, at the risk of being made answerable for any mistake by the other. . . . We have consequently no hesitation in deciding that an assignment like the present, which attempts to divide an entire cause of action and thus create a multiplicity of demands out of a single obligation, is not binding on the debtor and will not deprive him of the right to pay the debt into the hands of the person with whom it was originally contracted."

There is no justification, either in principle or convenience, for any such distinction between partial and complete assignments: 31 Yale Law Rev. 3.

It is agreed on all hands that partial assignments are good and enforceable in equity: Bispham's Equity, 10th ed., 287, and Escanaba Traction Co. *v.* Burns, 257 Fed. Repr. 898, 904.

Every reason for sustaining partial assignments will be found most admirably stated in the learned and exhaustive opinion of Peters, J., in the leading case of Exchange Bank *v.* McLoon, 73 Me., 498, 505. The learned judge says: "The debtor is not the only party whose interests should be considered. There is as much natural equity in many cases in protecting an assignment of a part of a claim as an assignment of the whole of it. Equitable assignments are the outgrowth of the requirements and refinements of the present busi-

ness era.   In many ways, directly and indirectly, do circumstances create assignments of parts of funds in dealings through servants, tenants, consignees, bankers and other agencies.   Disastrous results will often be experienced by deserving and innocent persons if this boon be not granted by courts of equity. . . . Should it be that a debtor cannot assign to a creditor what the same creditor may attach?   We must bear in mind that both the common law and equity have been constantly progressive in the consideration of commercial questions. . . . We think, upon reason and principle, partial assignments should be sustained in a court of chancery in all cases where it can be done without detriment to the debtor or stakeholder whenever equitable and just results may be accomplished by it."

The courts of this State have recognized and enforced partial assignments: Phœnix Iron Co. v. Philadelphia, 11 Phila. 203;  W. S. Cooper Brass Works v. Nass, 13 Dist. R. 405;  Beaumont v. Lane, 3 Pa. Superior Ct. 73, and Oakes v. Oram, 43 Legal Intell. 520.

Thus, in Oakes v. Oram, 43 Legal Intell. 520, the Supreme Court held that a debtor, with notice of a partial assignment, was liable to the assignee where the debtor neglected to set up the assignment in his answers in an attachment against his creditor and allowed judgment to be entered against him as garnishee for the whole debt.

As partial assignments are good in equity, and equity is part of our law (Loan Co. v. Elliott, 15 Pa. 224, 277, and Brownson's Equity in Pennsylvania, 20), they can be enforced through common law remedies.

The appropriate remedy in this case is clearly indicated in Armstrong v. Lancaster, 5 Watts, 68, where suit was brought in the name of A, to the use of B, against C.  B offered in evidence the assignment of the claim to him and C objected that the suit was really by A as surviving partner of A and X, whose creditors claimed that the suit should be to their use.  The trial judge sustained the objection, but the Supreme Court reversed, on the ground that the defendant had no concern in the first instance with the conflicting rights of the use-plaintiffs, but the Chief Justice discusses the duties of the debtor to bring to the notice of the court the partial assignments, and says: "Of all the parties concerned, the ostensible defendant had least to do with the equitable ownership.   But there may be adverse claimants of it;  and how are the rights of a party not named in the record to be protected?   Certainly not by preventing a recovery and extinguishing the expectations of himself and every one else.   If this judgment were affirmed, the party who maintained the contest under the defendant's shield would have concluded himself as well as his competitor.   What, then, was his most available course?   Obviously to lie by till recovery or to promote it, then to arrest the money in the sheriff's hands by notice to pay it over, rule it into court and move for leave to take it out.   This done, the pretensions of the claimants could be determined by the court or a jury under an issue, as the case might require.   Or, perhaps, the question might be properly, though not so conveniently, determined before recovery on a motion to strike out the name of the one claimant and insert the other.   But the court might properly suspend its decision till it were ascertained by recovery that the parties were not fighting for a shadow. Either of these courses will be open to the counsel who claims the fund for the partnership creditors."

To the same effect, see Caldwell v. Hartupee, 70 Pa. 74, 79.

As it is admitted that the commissions have been earned and the defendant has no concern in the first instance with the conflicting rights of the plaintiff and A. J. Mellman, there is no reason why judgment should not be entered

Diamond Textile Machine Works, Inc., v. International Batting Mills.

against the defendant. Permission, however, will be given the defendant to petition to pay into court one-half of the commissions claimed by A. J. Mellman, so that an issue can be framed to determine the rights in dispute. There is no reason why the other half of the commissions should not be paid at this time to the plaintiff.

The plaintiff also claims $25.46 for money advanced for the defendant, in which A. J. Mellman has no interest. The defendant authorized the purchasers to send a representative to Columbus, Ohio, to supervise the shipping of the machinery at the defendant's expense. This amount was paid by the purchasers, who were reimbursed by the plaintiff. There is no denial that the expense was incurred or that the amount is correct.

The allegation of the defendant that he has been unable to ascertain whether the plaintiff paid the purchaser is insufficient, because he could have obtained full information from the purchasers, and if they had informed the defendant the amount was due the plaintiff, the defendant would have been fully protected. Technically, this claim should have been sued for in the name of the purchasers, but we will consider the record amended as though the suit was so brought.

And now, to wit, Dec. 30, 1925, judgment is entered against the defendant for want of a sufficient affidavit of defence for $614.96, viz.: $575.46, with interest from Nov. 13, 1924. Execution is stayed for fifteen days, with leave to the defendant within that time to petition the court to pay into court one-half of the commissions with interest, and to frame an issue between A. J. Mellman and the plaintiff as to who is entitled thereto.

NOTE.—As to assignment of part of claim against municipal corporation, see Philadelphia's Appeal, 86 Pa. 179.