Appeals of the City of Philadelphia *et al.*

86    179
30 SC 295

1. While a partial assignment of a contract between individuals may be enforced in equity, yet where a municipality is a party to a contract it is not bound to recognise partial assignments of it.

2. A partial assignment being invalid, notice of it to the engineer and surveyor of the municipality does not render him liable to plaintiff. Having no instructions to give the warrant to any other person than the contractor, and the city recognising the validity of no other claim, the engineer, although he knew of the assignment of a part of the contract to plaintiff, was justified in drawing it in favor of the contractor and delivering it to him.

3. The controller, having loaned money to the contractor during the execution of the work and having countersigned the warrant, is not liable in this proceeding, by reason of the Act of February 2d 1854, which makes the officer of a city liable to impeachment, if interested directly or indirectly in any sale or contract for supplies furnished the city.

January 30th 1878.    Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ.

Appeal from the Court of Common Pleas, No. 3, of *Philadelphia county*.    In equity, No. 2.

The bill in equity was filed in this case June 12th 1874, by Peter A. Quin against the City of Philadelphia, Peter A. B. Widener, city treasurer, Samuel L. Smedley, chief engineer and surveyor, and A. B. Burton.    The bill avers that in June 1874 an ordinance was passed by councils of Philadelphia apropriating $6881.45 to pay for the completion of the bridge over the West Chester Railroad at its intersection with Darby road; that its contractor was A. B. Burton; that plaintiff had expended $4800 in said bridge for Burton, for which he had executed to plaintiff a partial assignment of his contract; that plaintiff notified Smedley of it and showed it to him prior to June 8th 1874; that on that date Smedley issued to Burton a warrant for the whole amount of said appropriation; that the payment of said warrant would be a mis-payment by the city; that plaintiff did not know who held it. The bill prayed for an injunction to restrain its payment and a decree for the sum of $4800, to be paid out of said appropriation. Subsequently the bill was amended by making the city controller a party defendant, and averred that he was interested in it and received the amount of it in cash.

The answer of Smedley denies that he knew of the assignment when the warrant was issued and admits that Burton brought him the ordinance on June 8th 1874, and that he drew the warrant, as it was his duty to do. The answer of A. B. Burton admits the appropriation by councils; that he was the contractor; avers that he has no knowledge that Smedley was notified of the assignment to plaintiff prior to June 8th 1874, or of the conduct of Smedley in issuing the warrant, or who has the warrant, or that Widener will pay it; that plaintiff did a part of the work, and that there is a balance

[Appeals of the City of Philadelphia.]

due him of $1979.85 ; that this sum was due under the agreement to do the work and not by virtue of an assignment. The answer of the City of Philadelphia avers that the assignment was not to operate as such between plaintiff and Burton ; that Smedley received notice a week before June 8th 1874; that he was not requested to issue the warrant in any manner different from those previously issued; that he issued a warrant to Burton for $6881.45, and the same having been properly countersigned, was duly paid. The answer of S. P. Hancock denies that the assignment to plaintiff was bona fide and that he was interested, but admits a loan to Burton to aid him in completing the work. The answer of P. A. B. Widener avers that he has no knowledge of the averments contained in the bill, except that the warrant was issued and paid.

The case was referred to a master, who, after reporting the facts and his conclusion on them, reported a decree that the City of Philadelphia shall pay plaintiff $4601.22. 2. That the bill be dismissed as to Widener with costs. 3. That Smedley shall pay plaintiff $4601.22 with costs. 4. That Burton shall pay plaintiff $4601.22 with costs. 5. That Samuel P. Hancock shall pay plaintiff $4601.22 with costs.

Exceptions were filed to this report, and were dismissed by the court below, and a decree accordingly was entered in favor of plaintiff. The dismissal of these exceptions and the entry of the decree were assigned for error.

*N. H. Sharpless, D. W. Sellers, C. E. Morgan,* Assistant City Solicitor, and *W. Nelson West,* City Solicitor, for appellant.—The bill is in the nature of a bill *quia timet,* and prays for an injunction to restrain the payment of the warrant, and that it be cancelled. The decree made is not under any special prayer for relief, and is not consonant to that made by the bill: Brightly's Eq. Jur. 455; 1 Daniel's Ch. Prac. 439.

This was a partial assignment of the claim. In Philadelphia *v.* Fockhanal, 23 P. F. Smith 216, the assignment was of all the warrants coming to the contractor. A partial assignment amounts to nothing : Jermyn *v.* Moffitt, 25 P. F. Smith 400 ; Gibson *v.* Cooke, 20 Pick. 152 ; Fairgrieves *v.* The Lehigh Nav. Co., 2 Phila. 182 ; Erie *v.* Knapp, 5 Casey 173 ; Mandeville *v.* Welch, 5 Wheat. 277 ; Walker *v.* Mauro, 18 Mo. 564; Wilson *v.* Carson, 12 Md. 54 ; Ex Parte Alderson, 1 Mad. 53 ; Row *v.* Dawson, 1 Vesey, Sr. 332 ; Rodick *v.* Gandell, 15 Eng. L. & E. R. 28 ; Selt *v.* Morris, 1 Simons 607.

*Anthony A. Hirst* and *Richard P. White,* for appellee.—The assignment was for all the substructure. The contract was separable, and this was no effort to divide it. Notice was given the proper officer : The City *v.* Lockhardt, 23 P. F. Smith 215.

[Appeals of the City of Philadelphia.]

The contract was not assigned, but the proceeds of it. A partial assignment is good in equity: Phœnix Ins. Co. v. The City, 2 W. N. C. 596.

As to the form of the bill, it is amendable, and the court will not reverse on mere matter of form: Williams's App., 29 P. F. Smith 121.

Mr. Justice MERCUR delivered the opinion of the court, May 6th 1878.

Peter H. Quin filed this bill against the City of Philadelphia, Peter A. B. Widener, city treasurer, Samuel L. Smedley, chief engineer and surveyor, and A. B. Burton. Three days thereafter, the bill was so amended as to make Samuel P. Hancock a party defendant. On the final hearing, the bill as to Widener was dismissed with costs; but it was adjudged and decreed that the City of Philadelphia, Smedley, Burton and Hancock should each pay to Quin the sum of $4601.22, together with costs of suit. From that decree, the City, Smedley and Hancock severally appealed, and they were argued together.

On the 30th June 1873, Burton entered into a contract with the City of Philadelphia to furnish the materials and construct a bridge over the Philadelphia and West Chester Railroad at Darby road. Payments were made by the city on the monthly estimates, as the work progressed; in all to the amount of $10,000. This left due on the final estimate the sum of $6881.45. The contention arises in regard to the claim of Quin to this money paid by the city on the final estimate.

It appears that Quin was surety for the fulfilment of Burton's contract, and by writing bearing date the 1st of July 1873, Burton assigned to Quin all his (Burton's) interest in the contract, "except the item of superstructure."

We will first consider the question whether the city, although notified of this assignment, was so far bound thereby as to be liable to Quin for having thereafter paid the money due on the last estimate to Burton. The assignment was not on the contract, but on a separate piece of paper. It was not noted on the contract, nor was it ever filed in the office of the controller. In all five estimates were made and five warrants drawn. All the estimates were made to Burton as contractor. The four preceding warrants in payment of the estimates, as well as the last, were all drawn in favor of Burton. Although Quin, by himself and agents, assisted in the construction of the work, yet it does not appear that the city ever admitted any liability to him or assumed to pay him. It will be observed that the assignment is not of the whole contract, nor of all the money to become due thereon. It is an assignment of a part only. The obligation which the city assumed with Burton was an entire contract. That which the latter assigned to Quin

was an uncertain and undetermined portion in dollars of the sum to be paid. It is true that it was susceptible of afterwards being determined by agreement between the parties to the assignment; yet they were liable to disagree as to Quin's rights under it, and in fact did disagree. They disagreed as to the object of the assignment, the amount of work done by Quin, the sum paid him and the amount due him on the completion of the work. In Philadelphia *v.* Lockhardt, 23 P. F. Smith 211, it was held that an executory contract for the payment of money by a municipal corporation might be assigned so as to pass an equitable right of action to the assignee. That, however, was an assignment of the whole contract, of all the money to become due thereon. The question now presented is whether such a corporation is bound to recognise an assignment of a part only of its obligation. If it must one uncertain part, we see no just reason why it must not as many parts as the convenience or whim of the obligee shall induce him to assign. The probable and natural effect of holding the municipality liable to each assignee would subject its officers to vexatious annoyances and the city to litigation and costs. It is conceded that at law the enforcement of such assignments would be questionable: Jermyn *v.* Moffitt, 25 P. F. Smith 399 ; Mandeville *v.* Welch, 5 Wheat. 277 ; yet it is claimed that they are good in equity, and therefore this assignment may be enforced here. There is no doubt that as between individuals this rule prevails in equity. Whether it shall so be held against a municipal corporation is now the question. It does not appear to have been decided by this court, nor has the research of counsel been able to cite the decision of any court of last resort in which it was so held. The policy of the law is against permitting individuals, by their private contracts, to embarrass the financial officers of a municipality. Hence it was held in Buckley *v.* Eckel *et al.*, 3 Barr 368, that an attachment execution, under the Act of 16th June 1836, would not lie against such fiscal officers. To the same effect is City of Erie *v.* Knapp, 5 Casey 173. A municipal corporation should not be subjected to the embarrassments, responsibilities and costs of adjudicating contracts to which it was not a party. While we adhere to the doctrine of Philadelphia *v.* Lockhardt, *supra*, yet we are unwilling to carry the rule to the extent asked for here, even in equity.

Having reached this conclusion in regard to the city, it necessarily removes the main grounds of complaint against Smedley. The assignment being invalid as against the city, no mere notice of it to him could make him liable to Quin. Smedley was the engineer and surveyor; his duties were limited; he had no power to change the contract, nor to ratify the assignment. Prior to the final estimate he was not authorized to draw a warrant. He made up the estimates of work done and certified them to the Commissioner of Highways. The appropriation was made to that depart-

-ment, and the Chief Commissioner of Highways drew the warrants. On the 25th of May 1874, Smedley duly certified the final estimate to the Chief Commissioner of Highways. The money remaining unpaid on the 8th of June 1874, the Select and Common Councils of the city passed, and the Mayor approved, an ordinance which ordained "that the sum of $6881.45 be and the same is hereby appropriated to the Survey Department, to pay for the completion of the bridge over the West Chester Railroad at Darby road, and warrants shall be drawn by the chief engineer and surveyor, in accordance with existing ordinances." On the same day Burton presented a copy of the ordinance to Smedley and asked for the warrant. The latter thereupon drew it in pursuance of the ordinance on the city treasurer, and handed it to Burton. This was four days before the bill was filed. Having no instructions to give the warrant to any other person than the contractor with the city, and the city recognising the validity of no other claim, Smedley was fully justified in drawing it in his favor and in delivering it to him. The fact that he knew that Quin had an assignment of a part of the contract and claimed the money did not impose on him any duty to withhold the warrant until the equities between Quin and Burton should be adjusted.

Then as to the appellant Hancock. Inasmuch as notice to the city or to Smedley of the assignment made to the appellee, was insufficient to prevent the issuing of the warrant to Burton, it necessarily follows that notice to Smedley was not notice to the appellant, and any knowledge he may have had of that assignment furnished no valid reason for withholding his approval.

Two other questions remain to be considered as affecting the liability of the appellant. The one, whether he had such an interest in the warrant itself as in law to prevent his approving and countersigning it; the other, whether, in case he illegally received a part of the proceeds thereof, the appellee has not a full and adequate remedy at law against him.

The master found the appellant "had a direct interest in the warrant in violation of law," and submitted a decree that he should pay to the appellee the sum due to him from Burton. In adopting the decree the court appears to have rested it on the ground that the appellant was interested in the sum due on the estimate, and was to receive a portion thereof, contrary to the ordinance of 20th February 1856. Whether these conclusions are correct depends on the proper construction of the Acts of Assembly and ordinance relating to the duties of the controller.

Section 12 of the Act of 2d February 1854, Pamph. L. 21, declares the controller "shall countersign all warrants on the city treasurer, and shall not suffer any appropriation made by the city councils to be overdrawn, and shall perform all the duties now enjoined by law on the county auditors." Section 51 declares if any

officer of the city shall be directly or indirectly interested "in any sale to or contract for supplies to be furnished to said city" or "shall receive any gratuity, money or property whatsoever by reason of such sale or contract," he shall be subject to impeachment and removal from office.   By sect. 29 of the Act of 29th May 1856, Pamph. L. 567, it is provided that the controller shall keep separate accounts, for each specific item of appropriation made by the city councils to each department of the city, and shall require all warrants to state particularly against which of said items the said warrant is drawn ; and shall not permit any one of the items of the appropriation to be overdrawn, nor the appropriation for one item of expense to be drawn upon for any other purpose than that for which the appropriation was specifically made ; upon receiving a bill or warrant from any one of the departments he was required to " proceed immediately to examine the same, and if the said bill or warrant contains an item for which no appropriation has been made or the appropriation for which is exhausted, or to which for any other cause he cannot give his approval, it shall be his duty immediately to inform such department, and the warrant therefor shall not be issued unless by special authority from the city councils."

The ordinance of 20th February 1856 declares, " no department shall issue any warrant until the bill containing such claim shall be presented by said department to the controller.  The controller shall audit such bill with the view to ascertain whether the supplies have been purchased or the services performed, and the sum charged therefor is proper ; and he shall inquire and ascertain if any member of the councils, member or officer of such board, officer of any department or officer or agent of the city corporation is interested in the sum due therefor or is to receive any portion thereof, or has received any commission, consideration or gratuity relating thereto ; and if any party is so interested, he shall refuse to countersign said bill and report the same to councils."

The evidence on which it is claimed these statutes and this ordinance impair the validity of the controller's action is substantially this : From time to time, during the progress of the work, he advanced or loaned money to Burton.  He testified, and the evidence appears uncontradicted, that he did it out of compassion for Burton and for the benefit of the city ; that the original appropriation was exhausted and he was informed the bridge was not fit for travel ; that this money was lent to be used in doing the work, paying the men and paying for the materials.  He took Burton's due-bills therefor, some of which stated they were payable out of the money for the completion of the bridge, and others for sums payable on demand.  It does not appear that Burton made any assignment to him of the fund.  When the warrant was presented for the appellant to countersign by Burton, a certified copy of the

ordinance approved was also exhibited to him.   He then counter-
signed the warrant and handed it to Burton.   The latter took it to
another table, endorsed it, and handed it back to the appellant.
Thereupon he deducted the sums he had advanced to Burton and
gave him checks for the residue of the warrant.   The same day he
obtained the money on the warrant.

The master thought the facts brought the case within the for-
bidden clause of the Act of 12th February 1854.   We think it
very doubtful whether a contract for building a bridge comes within
the meaning or spirit of " any sale to or contract for supplies."
The rule for construing statutes of this penal character will hardly
justify designating this contract as one " for supplies furnished
the city."   It would seem that the word " supplies" was designed
to apply to property of a personal character.   Whether this
be the correct construction is unnecessary now to decide.   The
proceeding against the appellant is not to impeach him and to
remove him from office ; nor is it to enjoin him against approving
and countersigning the warrant.   He had done these acts before
these proceedings were commenced.   This is merely the claim of
one individual against another for the money paid on a warrant
which Burton was justly entitled to receive.   How did the act of
the appellant in countersigning it injure the appellee ?   If it had
not been signed he could not have attached the debt in the hands
of the city : City of Erie *v.* Knapp, 5 Casey 173 ; nor could he
have compelled the issuing of the warrant to him.

The effect intended to be produced by a literal compliance with
the Act of 29th May 1856 is to delay the issuing of the warrant
until it shall be specially authorized by city councils.   The issuing
of this warrant had already been so specially authorized and or-
dered.   No action of the appellant could have procured from the
councils more specific authority than that which he held in his
hands when he signed the warrant.   The warrant stated on its face
all the statute required.   Its truthfulness was verified by the certi-
fied ordinance.   He had no right to divert that money from the sole
purpose for which it was appropriated.   There is no allegation that
the contract with Burton was not fairly and honestly made ; nor
that the estimate was not just and correct.   The warrant was drawn
for the precise sum specifically appropriated, and for the purpose
named in the ordinance.   The object of the act had thus been ac-
complished.   The issuing of the warrant was specially authorized
by councils.

Then as to the ordinance of 20th February 1856.   This mani-
festly refers to those cases in which " a bill" must be submitted to the
controller before a warrant shall be drawn.   It makes no reference
to warrants.   It provides he "shall audit such bill" for the pur-
pose of ascertaining if any of the objections in the ordinance
stated exist.   If so found, he shall refuse to countersign "said

bill." The present case was one in which, by an ordinance approved on the day of the appellant's action, the legislative authorities of the city had appropriated this specific sum for this specific purpose, and had ordered the warrant therefor to be drawn by the chief engineer and surveyor. It was so drawn.

It cannot be doubted that the same power which directed the general action of the controller in the cases coming within the ordinance of 20th February 1856, could, by ordinance of 8th June 1874, provide otherwise for the payment of a sum expressly appropriated to a specific object. In this case no "bill" was submitted to the controller in regard to which he could have inquired whether an official was "interested in the sum due therefor or was to receive any portion thereof." It is true he knew that he expected to receive from Burton, after the latter had received the warrant, the sums which he had advanced and for which he held due-bills; but the amount due him was in no manner affected by the sum Burton might receive from the city. It was not to be increased nor diminished thereby. It is not claimed that the appellant was interested in the contract when made, nor that he was to receive any share of the money to be paid thereon, "nor that he was to receive, or did receive, any commission, consideration or gratuity relating thereto." This ordinance of the 20th of February 1856 is a just and salutary one. It should be invoked whenever necessary to secure or protect the city against any collusion, combination or fraudulent conduct of any of its officials prejudicial to its interest. It should not by a forced construction be applied to the settlement of disputes to which the city is not a party, and in which it has no pecuniary interest. The city makes no complaint that the appellant did not refuse to countersign and did not report the reasons for his refusal to the councils. Had he reported to the councils that Burton was to pay him out of the money he was to receive, for the advances made during the progress of the work, the councils could well have replied, "no bill has been submitted for you to examine and audit. This is the case of a final estimate of the chief engineer and surveyor, made on a written contract. By ordinance, duly approved this day by the mayor, we have appropriated the precise sum to pay the estimate, and ordered a warrant to be drawn therefor. If our ordinance of 20th February 1856 would have required you to examine this claim, our ordinance of to-day relieves you therefrom. The claim is just. The debt is due. Burton is entitled to the warrant. You will therefore countersign and deliver it to him."

The fact must not be overlooked that the appellant had not only countersigned the warrant, but had actually received the money seven days before he was made a party to this bill. Thus, in advance of any proceedings against him, he had actually received the money. If the appellee is justly entitled to that money he has a full and adequate remedy at law : Patterson *v.* Lane, 11 Casey 275. As

the case was presented and now stands, we do not think the facts justify us in denying to the appellant the right of a trial by jury. A court of common law is the proper tribunal to determine the right of each party's claim to this money. We cannot, therefore, sustain the decree made by the learned judge.

And now, to wit, 6th May 1878, the decree against each of the three several appellants is reversed and set aside, and the bill as to each of them is dismissed without prejudice to the rights of the appellee against Hancock. It is further ordered that the appellee pay the costs of appeal, and in the court below.