## In the Matter of Condemnation of Better Days Urban Renewal Project

*Jack & Kookogey*, for petitioners.

*Mahany & Cable, Eckels, Blystone, Fuller & Kinnunen, Herbert E. Varnum, Barco & Barco, Pepicelli & Pepicelli,* and *Prather & Prather*, for respondents.

F. J. THOMAS, J., June 12, 1967. — This case is before the court upon a petition filed by the Redevelopment Authority of the City of Titusville, Pa., to approve a proposed schedule of distribution attached to the petition. This schedule includes distribution of the realty damages awarded by the board of viewers, as well as a proposed schedule of distribution for moving expenses and removal expenses.

On March 6, 1967, by agreement of the parties and, since no appeal had been taken from the award of the board of viewers, the court entered an order confirming the distribution of said realty damages but, for reasons hereinafter set forth, reserved the question of distribution of the amounts awarded for moving expenses and removal expenses.

The petition now before the court was filed under section 521 of the Act of June 22, 1964, P. L. 84, 26 PS §1-521, known as the Eminent Domain Code, which provides, inter alia, as follows:

"It shall be the obligation of the condemnor to properly distribute the damages. If the condemnor is

unable to determine proper distribution of the damages, it may, without payment into court, petition the court to distribute the damages and shall furnish the court with a schedule of proposed distribution".

This section then goes on to provide for notices and for such hearing "as may appear proper under all the circumstances".

It developed at oral argument and at a hearing directed by the court under said section that the issues relating to the distribution of the moving and removal expenses arose in the following manner. The declaration of taking in this case was filed on February 9, 1966. On August 8, 1966, Ralph Ludwig, a holder of one of the mortages against the real estate, entered judgment on the bond accompanying his mortgage and, on the same date, issued an execution at September term, 1966, no. 26, naming the redevelopment authority as garnishee. His reason for doing this is obvious. He was the holder of a fourth mortgage on the condemned premises, and apparently realized that the value of the real estate would not be sufficient to result in payment of his mortgage. This, in fact, turned out to be the case. The report of the board of viewers was filed December 9, 1966, in which only the first two mortgages shared in the proceeds awarded for the taking of the real estate.

In addition to the award of the realty damages, which are not now involved, the board made the following award (See corrected paragraph 5 of viewers' report) :

"5. . . .

"Moving expenses in the amount of Two Thousand One Hundred and no/100ths ($2,100.00) Dollars, which consists of Five Hundred and no/100ths ($500.00) Dollars for expense of removing personal property of the Condemnees and One Thousand Six Hundred and no/100ths ($1,600.00) Dollars moving

expense for personal property of the business known as the C. C. Mitchell Insurance Agency, are hereby awarded to the Condemnees, Charles Curtis Mitchell and Margaret G. Mitchell, his wife, subject however to possible attachment on said funds by Ralph Ludwig, Mortgage Holder.

"Removal expenses in the amount of One Thousand Two Hundred Twenty-six and no/100ths ($1,226.00) Dollars, which consists of Seventy-six and no/100ths ($76.00) Dollars for removal of a business sign, Two Hundred Fifty and no/100ths ($250.00) Dollars for plumbing expenses, Five Hundred and no/100ths ($500.00) Dollars for carpentry expenses, Two Hundred and no/100ths ($200.00) Dollars for electrial expenses and Two Hundred and no/100ths ($200.00) Dollars for plastering expenses are hereby awarded to the Condemnees, Charles Curtis Mitchell and Margaret G. Mitchell, his wife, subject however to possible attachment of said funds by Ralph Ludwig, Mortgage Holder".

Faced with this problem, the redevelopment authority filed this petition, alleging in paragraph 8 thereof:

"8. The moving and removal expenses awarded by the Board of View have been attached in the hands of your petitioner by an attachment execution creditor of the condemnees, naming your petitioner garnishee, all being in violation of the immunity of the Redevelopment Authority, a body politic and corporate subdivision of the Commonwealth of Pennsylvania".

Ralph Ludwig, the attaching creditor, filed preliminary objections to the petition for confirmation of the proposed schedule for distribution, alleging:

"It is Ludwig's position that under the circumstances of this case the funds in the hands of the Redevelopment Authority of the City of Titusville awarded for moving expenses under Section 610 of the Eminent Domain Code and for removal expenses

under Section 608 of the Eminent Domain Code are not immune from attachment by Ludwig under his judgment, but in any event the question of the existence of such immunity should be raised in the execution proceedings under Pennsylvania R. C. P. 3145 and not in these proceedings".

As noted, the board of viewers made no award for business location damages, but Ludwig, the attaching creditor, in his execution at September term, 1966, no. 26, filed interrogatories directed to the redevelopment authority requiring said authority to "state what, if any, funds you have in your hands payable to the defendants, or any of them, on account of the condemnation proceedings in the Court of Common Pleas of Crawford County, Pennsylvania, at No. 145 February term, 1966". The redevelopment authority filed an amended answer to the interrogatories, setting forth that it had in its hands the moving and removal expenses awarded by the board of viewers in the sum of $3,326, and, in addition thereto, the sum of $2,500 "payable from funds of the U. S. A. as a dislocation allowance to the defendants". Under new matter, the authority, in said amended answer, alleged that "the Redevelopment Authority of the City of Titusville is a public body, corporate and politic, exercising public powers of the Commonwealth of Pennsylvania as an agency and instrumentality thereof, and, as such, is, therefore, not subject to attachment execution proceedings".

Such is the posture of the case as it is now before the court. While it may be true that the matter should be adjudicated in the execution proceedings, as contended by the attaching creditor, nevertheless the court could not pass upon the petition for distribution without necessarily passing upon the validity of Ludwig's execution naming the authority as garnishee. Since both of these matters are in the same court, we feel

constrained to combine these cases for the purpose of determining proper distribution of the funds in the hands of the redevelopment authority. The parties agree that nothing could be gained by any other procedure.

There are, therefore, two issues raised which must be determined by the court:

I. Is the Redevelopment Authority of the City of Titusville, as a public body corporate and politic, exercising public powers of the Commonwealth of Pennsylvania as an agency and instrumentality thereof, immune from the attachment execution proceedings?

II. If no such immunity exists, are the funds specifically allocated by the board of viewers for moving and removal expenses (and the dislocation allowance from Federal funds) subject to attachment under the Eminent Domain Code and general principles of law?

We must first consider the question of the immunity of the redevelopment authority. It would seem clear that prior to the decision of the Supreme Court in the case of Central Contracting Company v. C. E. Youngdahl & Company, Inc., 418 Pa. 122, 209 A. 2d 810 (1965), that the Commonwealth and its subdivisions were not subject to attachment execution, irrespective of how the obligation of the judgment debtor arose: 7 Standard Pa. Prac. 287; City of Erie v. Knapp, 29 Pa. 173; Hutchinson & Co. v. Gormley, Executor of Lewis, 48 Pa. 270; Appeals of the City of Philadelphia, 86 Pa. 179. The rule is further stated in 7 Standard Pa. Prac. 431, as follows:

"It is a general rule that funds in the hands of municipalities and government agencies, but owed to individuals, are not subject to attachment or other legal process".

However, there was some deviation from this rule, at least in the case of foreign attachment, even prior to the Youngdahl case: Haines v. Lone Star Shipbuild-

ing Co., 268 Pa. 92, 110 A. 2d 788. In that case, the court significantly pointed out at page 100:

"Moreover, it is in general highly desirable that in entering upon industrial and commercial ventures, the governmental agencies used should, whenever it can fairly be drawn from the statutes, be subject to the same liabilities and to the same tribunals as other persons or corporations similarly employed".

In the Youngdahl case, the Supreme Court adopted that rationale, and held that a housing authority which could sue or be sued under the Housing Authority Law, was amenable to garnishment process in a foreign attachment execution. In so holding, the court pointed out at page 127:

"The activities carried on by the Housing Authority implicate it in various and complex legal relationships involving bonds, construction contracts, and leases. This is why '(a)ny Authority may employ its own counsel and legal staff.' In this context it is plain that the duties of a garnishee in foreign attachment proceedings are not overly burdensome upon an Authority".

In the light of these cases and the rationale implied therein, we hold that a redevelopment authority is not per se immune from being summoned as a garnishee in execution proceedings. The act under which such authorities are formed, including the redevelopment authority in this case, also provides that such authorities may sue and be sued: Urban Redevelopment Law of May 24, 1945, P. L. 991, sec. 9, as variously amended, 35 PS §1709 (q).

The duties of a garnishee in executions under our present procedural rules are no more burdensome than those of a garnishee in foreign attachment. Pennsylvania Rule of Civil Procedure 3141 (a) provides:

"If the garnishee forwards copies of the writ and his answers to interrogatories to the defendant, he

shall thereafter be under no duty to resist the attachment or defend the action against the defendant in any manner but may do so as provided by these rules".

It will be noted, as set forth in the explanatory comments on the execution rules, that the proceedings by plaintiff and garnishee are substantially the same as under the foreign attachment rules, even though the execution rules are complete in themselves and no longer depend upon cross reference to the foreign attachment rules: Explanatory Comments to 4 Goodrich-Am. at 22. It would seem, therefore, that there is no good reason why the authority in this case cannot be summoned as a garnishee in execution process— the same as in foreign attachment proceedings. In fact, garnishment under prior law was treated as a suit within the rules that a State may not be sued without its consent. See cases collected in 114 A. L. R. 261.

We pass, therefore, to the second, and perhaps more difficult and complex, question involved in this case, which may also be stated as follows:

May the attaching creditor be given priority over funds specifically awarded by the board of viewers for certain purposes, to wit, moving and removal expenses and by the Federal Government for business dislocation allowance?

In this connection, some light is thrown upon the question involved by reference to the provision in the Eminent Domain Code relating to distribution of damages and the Comment of the Joint State Government Commission thereunder. The first paragraph of section 521 of the Act of June 22, 1964, P. L. 84, provides, as follows:

"Damages payable to a condemnee under any provision of this act shall be subject to a lien for all taxes and municipal claims assessed against and all mortgages, judgments and *other liens of record against the property for which the particular damages are*

*payable, existing at the date of the filing of the declaration of taking,* and said liens shall be paid out of the damages in order of priority before any payment thereof to the condemnee, unless released". (Italics supplied).

Under this section, the comment of the Joint State Government Commission, 1964 Report, 26 PS §521, provides, in part, as follows:

"This section is intended to cover all damages, including damages agreed upon and damages payable under Section 407 [section 1-407 of this title]. It is intended that the liens shall attach only to the damages payable for the property on which the mortgage, judgment or other charge existed. For example, a mortgage on real estate will not be a lien on damages for moving or removal expenses or business dislocation damages".

This section and the comment thereunder would seem to indicate that the priority of liens and their source of payment are fixed as of the date of the declaration of taking. It would seem highly improbable that the intent of this section, as expressed in the comment thereunder, could be defeated by the entry of a judgment on a mortgage and the issuance of execution process thereon.

The reason for this section and its express intent might well be that the framers of the Eminent Domain Code anticipated that persons whose property has been appropriated for public purpose might well not be able to employ persons to cover the expense of moving, removal and dislocation, if they knew that the funds were attached and, therefore, not available to them. This, of course, could seriously disrupt the processes of completing the acquisition of property for public purposes and making same available for the use for which it was intended.

It has been argued that, under these circumstances, the authority could contract directly with the persons involved in performing services in connection with moving, removal, and dislocation, and thereby avoid this result. This argument cannot, however, be accepted. It would deprive the owner of the right to determine details of moving and removal, which only he can and should decide. The manner in which condemnee moves and the expenses of said removal, are details which should not be taken from condemnee, making him a mere bystander in the whole condemnation process.

Finally, and perhaps even more persuasively, is the fact that the attaching creditor has lost none of the security that he had prior to the declaration of taking. It would be inequitable to permit him to gain an advantage because of money specifically allocated to put condemnees as nearly in the same position as they were prior to the taking. Conversely, it would be just as inequitable to penalize condemnees by making available for seizure funds which were not available to the attaching creditor prior to the taking, and which would thereby defeat the purpose of leaving condemnees in the same situation as they were at the time of such taking. To prevent this result, it is necessary to deny this attachment under the relevant provisions of the Eminent Domain Code. In fact, even without such provisions, equitable principles would require us to hold that the funds arising from the award of moving expenses, removal expenses, and business expenses are so impressed with a trust or lien in favor of the owners for the benefit of those who render the services so as to make such funds immune from attachment.

Therefore, whether we say that the funds specifically allocated to the items here involved are so impressed with a trust or lien in the hands or in favor of

the owner for the benefit of those who render the services, or whether we say that the provisions of the Eminent Domain Code herein referred to defeat this attachment, the result is the same.

It is noted that, at the hearing directed by the court, certain of the bills for moving and removal expenses have already been assigned by condemnees to the persons furnishing the services, and it is assumed that the redevelopment authority will take note of and recognize these and any other valid assignments. We here hold only that, while the redevelopment authority is not per se immune from being summoned as a garnishee in execution process, the attaching creditor cannot prevail under the Eminent Domain Code and the facts and circumstances of this case.

It is also pointed out that the court has included distribution of the business dislocation allowance in this opinion, although this amount was not an award of the viewers, but rather an allowance (apparently a fixed amount) from the Federal Government. We did this because the amended answer to the interrogatories in the execution proceedings specifically acknowledged that the authority had this amount in its hands for distribution, along with the amounts awarded for moving and removal expenses by the board of viewers. However, at the hearing, condemnee testified that he was willing to assign and have this sum paid to Ludwig. Since the court is acting in accordance with equitable principles, we will consider as done that which the parties have agreed to do and direct this sum to be paid to Ludwig as appears in the following order of distribution required by section 521 of the Eminent Domain Code:

## ORDER

The expenses for moving and removal and the business dislocation allowance in the hands of the Titusville Redevelopment Authority shall be distributed to

Charles Curtis Mitchell and Margaret G. Mitchell, his wife, condemnees, subject, however, to any assignments heretofore made, or made prior to payment by the authority, to wit:

To Jack Neely and Clara Neely, his wife, doing business as W. A. Meyers Trucking Company—By assignment from condemnees—For moving expenses awarded by the board of viewers—the sum of $2,100.

To Don F. Henderson—By assignment from condemnees — For electrical expenses awarded by the board of viewers—the sum of $200.

To Lloyd F. Shepard—By assignment from condemnees—For plumbing expenses awarded by the board of viewers—the sum of $250.

To Charles Curtis Mitchell and Margaret G. Mitchell, his wife—Subject to any assignments made and filed with the authority prior to payment — As awarded by the board of viewers, to wit: For removal of a business sign, the sum of $76; for carpentry expenses, the sum of $500; for plastering expenses, the sum of $200.

To Ralph Ludwig—In accordance with the consent of condemnees expressed at the hearing—For business dislocation allowance from the U. S. A.—the sum of $2,500.