REAL ESTATE TRUST CO. OF PHILADELPHIA v. WASHINGTON, A. & MT. V. RY. CO.

(Circuit Court of Appeals, Third Circuit. February 21, 1911. Rehearing Denied May 15, 1911.)

No. 12, October Term, 1910.

1. BANKS AND BANKING (§ 315*)—TRUST COMPANIES—OFFICERS—FRAUD.

Under the rule that, where one of two innocent persons must suffer through the fraud of another, the loss must fall on him by whose act or omission the wrongdoer has been enabled to commit the fraud, plaintiff company cannot recover from defendant trust company bonds of plaintiff, which its trustee, also defendant's president, fraudulently used for his own benefit as collateral for fictitious loans, where other officers of plaintiff negligently failed to see that the bonds were destroyed; they having been paid.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 315.*]

2. BANKS AND BANKING (§ 116*)—OFFICERS—FRAUDULENT ACTS—LIABILITY OF BANK.

A bank has no constructive notice of fraudulent acts by an officer, which he would not naturally disclose to it.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 282–287; Dec. Dig. § 116.*]

3. BANKS AND BANKING (§ 315*)—TRUST COMPANIES—FRAUD OF PRESIDENT—NOTICE.

Knowledge of fraud of a trust company's president in depositing bonds of another as collateral under fictitious loans for his own benefit is not imputable to the company.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 315.*]

4. BANKS AND BANKING (§ 315*)—TRUST COMPANIES—FRAUD OF PRESIDENT—LIABILITY.

Defendant trust company cannot claim, as against the mortgagor, bonds which it held as trustee, and which its president, who was also an officer in the mortgagor company, fraudulently pledged to defendant, after the mortgage was satisfied, as collateral for fictitious loans; defendant being bound to keep the bonds safely for mortgagor.

[Ed. Note.—For other cases, see Banks and Banking, Dec Dig. § 315.*]

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

Bill by the Washington, Alexandria & Mt. Vernon Railway Company against the Real Estate Trust Company of Philadelphia. From a decree of the United States Circuit Court for the Eastern District of Pennsylvania (177 Fed. 306), defendant appeals. Partly affirmed, and partly reversed.

George H. Earle, Jr. (Joseph De F. Junkin and John G. Johnson, of counsel), for appellant.

W. B. Bodine, Jr., G. W. Pepper, and Moore, Barbour & Keith, for appellee.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below the Washington, Alexandria & Mt. Vernon Railway Company, a corporation of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the state of Virginia, hereinafter called the "Railway," filed a bill in equity against the Real Estate Trust Company of Philadelphia, a corporation of Pennsylvania, hereinafter called the "Trust Company," to enjoin it from enforcing, and to compel delivery by it to complainant of, 96 mortgage bonds of the latter company, of $500 each, dated July 1, 1892, and issued under a mortgage of that date, given by the Railway to Frank K. Hipple and James W. Schwartz, trustees. The bill prayed the same relief with reference to 50 mortgage bonds, of $1,000 each, dated August 1, 1895, and given under a mortgage of that date by the Railway to the Trust Company as trustee. On final hearing the court below, in an opinion wherein the facts of the case are set forth in extenso and reported at 177 Fed. 306, held the Railway was entitled to the relief prayed for. From a decree so adjudging the Trust Company appealed to this court. After argument and a careful study of all the proofs, we have reached the conclusion the court below was right in granting the relief prayed for as to the 50 $1,000 bonds, but was in error in granting the relief prayed for as to the 96 $500 bonds. Turning first to the questions arising over the latter bonds, it seems that both the Railway and the Trust Company were innocent victims of the dishonesty of Hipple, and the case turns upon the question upon which of them shall the loss fall? In such case the law has established the broad, equitable rule that:

"Where one of two innocent persons must suffer by reason of the fraud or deceit of another, the loss should fall upon him by whose act or omission the wrongdoer has been enabled to commit the fraud." O'Connor v. Clark, 170 Pa. 321, 32 Atl. 1030, 29 L. R. A. 607.

And to the same effect is Pennsylvania Railroad's Appeal, 86 Pa. 81, wherein it is said:

"Where one of two parties, who are equally innocent of actual fraud, must lose, it is the suggestion of common sense, as well as equity, that the one whose misplaced confidence in an agent or attorney has been the cause of the loss shall not throw it on the other. As Judge King has well expressed this principle in Bank of Kentucky v. Schuylkill Bank, 1 Parsons' Equity Rep. 248: 'The true doctrine on this subject is that, where one of two innocent persons is to suffer from the tortious act of a third, he who gave the aggressor the means of doing the wrong must alone bear the consequences of the act.'"

Now in the case before us the Trust Company, on November 20, 1902, by its check of even date for $65,000, loaned that sum on a note of J. W. Schwartz. This was in reality a loan obtained by Hipple for himself. The Trust Company received from Hipple, as collateral therefor, inter alia, the 96 bonds here involved. All of said bonds had been paid or retired by the Railway, and were in the hands of its trustees for cancellation. On August 24, 1895, the said two trustees, Hipple and Schwartz, joined in an acknowledgment of satisfaction of said mortgage, which was duly recorded. Shortly thereafter, Schwartz, one of the trustees, who had in his possession $152,000 of the bonds, burned them. Hipple, the other trustee, who then had the other $48,000 in his hands for retirement, did not destroy them, and continued to retain them from 1895 until 1902. During

that period Schwartz, his cotrustee, made no inquiry or took no steps to see that these bonds were destroyed. He says:

"I do not recall ever asking him positively and definitely whether he did or did not cancel them; but I assumed, I presume, that he would do just as I did. * * * I ought to have done it, but I did not. It was simply a failure to do it."

It subsequently transpired that Hipple, who was president of the Trust Company, had looted it by concealed loans, and on the discovery thereof committed suicide. From the facts in this case it is clear that while Hipple was president of the Trust Company, from 1895 to 1902, his custody of the bonds in question during that time was as the agent or representative of the Railway. The latter was, through a subsidiary construction company, engaged in building a street railway in Virginia. Hipple, in addition to acting with Schwartz as trustee in the Railway's 1892 mortgage, was, with Schwartz, financing the Railway to the extent of practically conducting all its financial affairs. He was a stockholder, director, assistant treasurer, and secretary of the Railway also. The 96 bonds in question had originally been pledged to the Trust Company for another loan, but this was paid. It is clear that the Trust Company was in no way responsible thereafter for these bonds. If Hipple had wrongfully used them, by pledging them to some other bank for a personal loan, it is quite clear that the Real Estate Trust Company would not have been responsible to the Railway for such wrongful act. Furthermore, it is equally clear that Hipple, in fraudulently pledging these bonds to his own trust company for his own personal account, does not charge the Trust Company with knowledge that the bonds were in effect retired and the mortgage satisfied. The principle is well established (Lilly v. Hamilton Bank, 178 Fed. 53, 102 C. C. A. 1) that a bank is not constructively visited with notice of fraudulent acts which its officer would not naturally disclose to it. Hipple, then, being the agent of the Railway and having these bonds in his custody, as its mortgage trustee, has the Railway been guilty of any act or omission by means whereof Hipple was enabled to commit the fraud?

Assuredly we think it has. He and Schwartz were the trustees of the Railway's mortgage. They were also directors and officers thereof, and both were its financial agents in carrying on its affairs. They were, by virtue of their relations, entitled to the custody of its bonds, and when the mortgage came to be satisfied it was the duty of the Railway's trustees to destroy these bonds, and of its officers to see the trustees performed their duty. Indeed, Schwartz, as shown by his testimony, admits he was remiss in that respect. He neither saw that the bonds, which he knew his cotrustee held, were burned or canceled, nor did he require any proof they had been destroyed. On the contrary, both he as the agent of the company and the company by its other officers failed to take any steps to insure the retiring of the bonds, and permitted them for more than seven years to lie uncanceled in the hands of their own agent, Hipple, who, as we have seen, occupied the position of its trustee, secretary, assistant treasurer, and, with Schwartz, was its financial agent. It is therefore clear beyond question that the laxness and carelessness of the complainant left in

the hands of Hipple a serviceable instrument of fraud, and, indeed, one that to a man of his character was almost provocative thereof. The retention of those bonds by the trustee was wrong, and, like all wrongs, led to others, and the subsequent hypothecation of them was a result that was likely to follow. No trustee would have had any purpose in retaining them, save a sinister one, and failure by the complainant to see that the trustees of its mortgage destroyed or canceled its retired bonds was in effect providing him with an instrument for working fraud on others. And in this transaction the Trust Company bore the relation of an innocent party, for the knowledge of the fraud on the part of Hipple, its president, is not, under the circumstances of this case, to be imputed to it. In fraudulently negotiating the loan of November 20, 1902, with the Trust Company on the mythical paper of J. W. Schwartz, Hipple was acting for himself, and not as agent for the Trust Company, and the fault of the complainant made that fraud on the Trust Company possible.

We are therefore of opinion that as to the 96 bonds, of $500 each, issued under the mortgage of July 1, 1892, the bill should have been dismissed by the court below.

As to the 50 bonds, of $1,000 each, held by the bank as collateral for the note given by W. H. Whitesides, we are clear the complainant was entitled to relief. The complainant, on August 1, 1895, executed its mortgage to the Trust Company, and delivered to such trustee 750 bonds, of $1,000 each, duly executed by the complainant's officers. At the request of the complainant from time to time the Trust Company duly certified 700 of said bonds and delivered them to the complainant company. The remaining 50 have never been called for by the complainant, and are still in the Trust Company's possession. To the complainant's demand by this bill that it now surrender such bonds to it the Trust Company makes answer that Hipple pledged such bonds to it as collateral security for a personal loan he obtained through one W. H. Whitsides, on December 23, 1904. We are of opinion that this affords no defense to the trustee. Its duty as mortgage trustee and custodian of these bonds is unquestioned. If it failed to keep them securely and subject alone to complainant's order, it violated its duty; and if one of its officers had pledged them to a third person, undoubtedly the Trust Company would be responsible to the Railway for its breach of duty as trustee in surrendering custody of its bonds. And if this be so in the case of a third party, how can the Trust Company, by loaning money upon them itself, make its own wrong create a right. Obviously its possession of the 50 bonds at all times was and is that of a trustee, and, in the absence of any act of its cestui que trust, it cannot change its relation as trustee custodian by any act of its own servants. Although Hipple, as we have seen, had relations with both the Trust Company and the Railway, whereby he was an agent for both in certain regards, yet in the custody of these 50 bonds and all his acts in relation thereto, he was acting as the agent of the Trust Company, the trustee, and not as the agent of the Railway. The former, therefore, must bear the loss caused by his breach of duty.

As to that portion of the bill the court was right in sustaining the bill.