# Annie O'Connor, Adm'x of the estate of John O'Connor, Deceased, *v.* John Clark, Appellant.

*Sale—Fraud—Estoppel—Evidence.*

To create an estoppel by which an owner is prevented from asserting title to and is deprived of his property by the act of a third person, without his assent, two things must concur : (1) The owner must have clothed the person, assuming to dispose of the property with the apparent title to or authority to dispose of it; and (2) the person alleging the estoppel must have acted and parted with value upon the faith of such apparent ownership or authority, so that he will be the loser if the appearances to which he trusted are not real.

Where the owner of a wagon for his own gain and profit permits the name and occupation of another person to be painted on the wagon, and such other person sells the wagon to a purchaser acting with due caution and in good faith, the owner is estopped from claiming the wagon from the purchaser.

Argued Jan. 21, 1895.   Appeal, No. 169, July T., 1895, by defendant, from judgment of C. P. No. 2, June T., 1891, No. 89, on verdict for plaintiff.    Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Replevin for a horse and wagon.    Before PENNYPACKER, J.

At the trial evidence for the defendant tended to show that in September, 1890, John O'Connor, who was engaged in the business of keeping wagons for hire, had in his employ George Tracy, who had formerly been in business for himself as a piano mover.   At this time, O'Connor was having a wagon built, and he directed the builder to print on the wagon the words " George Tracy, Piano Mover."   The apparent object of this was to retain the business which Tracy had built up for himself.   In April, 1891, Tracy attempted to sell the wagon at a bazaar but was not successful.   He subsequently encountered the defendant, who agreed to buy the horse and wagon for $125, but before paying the money, he went with Tracy to a police station and a saloon, where Tracy was identified as the George Tracy whose name was on the wagon.   There was evidence that Tracy was intoxicated at the time of the sale.

The court charged in part as follows :

" [ As I·view this case there is very little in it for your determination.   It is no doubt a hardship on the defendant that he should have paid his money away for something to which he got no title, but it appears from the undisputed testimony that this wagon belonged to the plaintiff's testator and that he was the owner of it, and that this man Tracy, without his permission, took it off and sold it, or attempted to sell it.   Under these circumstances no title was conveyed to the defendant.   If, therefore, you believe the testimony in this case, it is your duty to find a verdict for the plaintiff.] " [1]

The defendant has submitted the following points for instruction :

" 1. If the jury believe from the evidence that the plaintiff's decedent allowed Tracy, who sold the team to the defendant, to exercise such control and possession as to imply a right to sell, then the evidence must be for the defendant.   *Answer :* What is meant by that is, no doubt, that the verdict must be for the defendant.   Under the circumstances of this case I decline that point. [2]

" 2. If the jury find from the evidence that the plaintiff's decedent allowed Tracy to put his name on the wagon, and made no effort to efface it, and thereby allowed the defendant to be misled, their verdict must be for the defendant.   *Answer :* I decline that point, having instructed you that the verdict ought to be for the plaintiff in the event of your believing the testimony." [3]

Verdict and judgment for plaintiff for $275.   Defendant appealed.

*Errors assigned* were (1–3) above instructions, quoting them.

*John H. Fow* and *E. A. Anderson*, for appellant.—The conduct of the owner of the horse and wagon was such that it would undoubtedly be a fraud on the defendant, an innocent purchaser for value, to allow a recovery against him : Lecky v. McDermott, 8 S. & R. 500.

The rule of law is well established that where one of two innocent parties must suffer a loss, such loss must be borne by the party whose neglect was the occasion of it: Miller v. Broarsky,

130 Pa. 372; Shaw v. Levy, 17 S. & R. 99; Sinclair v. Healy, 40 Pa. 417; Lecky v. McDermott, 8 S. & R. 500; Rupp v. Palmer, 3 Watts, 178.

*J. Edward Carpenter*, for appellee.—The defendant purchased the horse, wagon and harness from a drunken man, at a price so low as to have been ample notice to a purchaser that he was not dealing with the owner.

The title of property in things movable can pass from the owner only by his own consent and voluntary act, or by operation of law : Saltus v. Everett, 20 Wend. 366; McMahon v. Sloan, 12 Pa. 229; Ripley v. Galston, 9 Johns. 197; Quinn v. Davis, 78 Pa. 15.

OPINION BY MR. CHIEF JUSTICE STERRETT, October 7, 1895:

If there were nothing more in this case than the facts recited by the learned trial judge in the excerpt from his charge quoted in the first specification of error, the instructions therein given to the jury to find for the plaintiff, if they believed the testimony, would be substantially correct. The only facts of which this instruction is predicated are, (1) that the wagon in question was the property of John O'Connor the original plaintiff, and (2) that Tracy, without his permission, took it and sold it or attempted to sell it to the defendant as his own. But, these are not the only facts of which there was evidence before the jury. On defendant's behalf, it is contended that the testimony tended to prove, and the jury, if they had been permitted, would have been warranted in finding that defendant purchased the property in question from Tracy in the honest belief that he was in fact the owner thereof; that the name and occupation of Tracy, viz : " George Tracy, Piano Mover; " were on the wagon when he offered it for sale, and that fact was referred to as indicating his ownership of the property, etc., that Tracy being a stranger, defendant was specially careful to inquire and inform himself that the person, who was in possession of and offering to sell the wagon, was the George Tracy whose name and occupation were painted thereon ; that Tracy's name and occupation were put upon the wagon with the knowledge of O'Connor, the original plaintiff, and himself, and by direction of the former, for the purpose of creating the impres-

sion and inducing the public to believe that the property belonged to Tracy, and was being used by him in his business, as a "piano mover," in which he had theretofore been engaged.

Without attempting to summarize the testimony relied on by the defendant, it is sufficient to say that it tends to prove substantially the state of facts above outlined, and especially that the original plaintiff, for his own gain and benefit, was a party to the arrangement whereby Tracy's name was put on the wagon for the purpose of misleading the public into the belief that the property was his, and that defendant, acting with due caution and in good faith, was thus misled as to the ownership of the property and purchased the same from Tracy.

While the soundness of the general rule of law that a vendee of personal property takes only such title or interest as his vendor has and is authorized to transfer, cannot for a moment be doubted, it is not without its recognized exceptions. One of these is where the owner has so acted with reference to his property as to invest another with such evidence of ownership, or apparent authority to deal with and dispose of it, as is calculated to mislead and does mislead a good faith purchaser for value. In such cases the principle of estoppel applies and declares that the apparent title or authority, for the existence of which the actual owner was responsible, shall be regarded as the real title or authority, at least so far as persons acting on the apparent title or authority and parting with value are concerned. Strictly speaking, this is merely a special application of the broad equitable rule that where one of two innocent persons must suffer loss by reason of the fraud or deceit of another, the loss should fall upon him by whose act or omission the wrongdoer has been enabled to commit the fraud. Assuming in this case that a jury under the evidence should find, as we think they would be warranted in doing, that such marks of ownership were placed on the property by direction of O'Connor, the real owner, as were not only calculated to deceive, but actually intended to deceive the public, and that by reason thereof, and without any fraud or negligence on his part, the defendant was misled into the belief that Tracy was the real owner, and he accordingly bought and paid him for the property, can there be any doubt, as between the real owner and the innocent purchaser, that the loss should fall upon the

former by whose act Tracy was enabled to thus fraudulently sell and receive the price of the property? We think not.

In Bannard v. Campbell, 55 N. Y. 456, and 58 Id. 73,—a well considered case involving substantially the same principle,—it was held that to create an estoppel by which an owner is prevented from asserting title to and is deprived of his property by the act of a third person, without his assent, two things must concur: "1st. The owner must have clothed the person, assuming to dispose of the property, with the apparent title to or authority to dispose of it.  2d. The person alleging the estoppel must have acted and parted with value upon the faith of such apparent ownership or authority, so that he will be the loser if the appearances to which he trusted are not real."

Without further consideration of the questions involved we think the testimony, to which reference has been made, tended to prove facts which, if found by the jury, would have brought the case within the principle of estoppel above stated, and that the learned judge, by the instructions above complained of, virtually withdrew the effect of that testimony from the consideration of the jury.  In defendant's second point, he was requested to charge: "If the jury find from the evidence that the plaintiff's intestate allowed Tracy to put his name on the wagon, and made no effort to efface it and thereby allowed the defendant to be misled, their verdict must be for the defendant."  This was refused with the remark that he had already instructed them that their verdict ought to be for the plaintiff in the event of their believing the testimony.

It follows from what has been said that the first and third specifications should be sustained.  The second specification is dismissed.  As presented, defendant was not entitled to an affirmance of the point therein recited.

Judgment reversed and a venire facias de novo awarded.