## Gurdus to use of Solnicki *v.* Philadelphia National Bank, Appellant.

*Practice, C. P.—Trial—Statement of claim—Affidavit of defense.*

1. The proper method for placing upon the record, for the purposes of a trial, the averments of the statement of claim which are not denied by the affidavit of defense, is to offer them in evidence specifically.

2. If this be done, the facts stated therein cannot be contradicted or qualified by the opposite party.

*Practice, C. P.—Continuance—Discretion of court—Abuse.*

3. The granting or refusing of an application for a continuance is a matter for the exercise of a sound discretion, and this will not be reviewed on appeal except in cases of clear abuse.

4. It was not an abuse of discretion to refuse an application for a continuance for an indefinite time; the proper practice is to ask it for a definite time, with leave to renew the application.

5. Nor was it where the continuance was asked on account of the absence of witnesses, and no attempt was made to comply with a

rule of court requiring an affidavit in such case stating what the witness would say, if present.

### *Appeals—Application for relief—Grounds for relief.*

6. If an applicant seeks the wrong character of relief the court will not be reversed for refusing it, even though cognate relief would have been proper and the court could have granted it in deciding the application actually made; the court is not obliged to mould the application but only to decide it.

### *Contract—Sales—Drafts—Warehouse receipts.*

7. Where a single draft is drawn to cover two or more separate sales of goods, and is forwarded with one or more warehouse receipts or certificates in regard thereto, the purchaser or his assignee may pay either one and require the proper warehouse receipt to be delivered.

8. Where a single draft covers two or more separate sales of goods, and the vendor or his assignee resells them, after the draft has been paid, he thereby makes himself liable to each assignee of the original vendee having an interest therein at the time of the resale.

### *Judicial notice—Foreign government, change of—Paralysis of foreign court.*

9. A court cannot take judicial notice of the fact that a change of government in a foreign country results in paralyzing the judiciary of that country.

10. Ordinarily judicial notice is taken only of such matters as are so certainly true and are so well known that everybody is supposed to take notice thereof.

### *Contract—Sales—Principal and agent—Payment.*

11. Where a vendee of goods has paid to an accredited agent of the vendor, or his assignee, the purchase price of the goods, the former will be entitled to recover the goods or their value, although thereafter, owing to political disorders in the foreign country where the payment was made, the principal cannot prosecute a suit against his agent.

### *Principal and agent—Two innocent persons—Payment—Maxim.*

12. Where one of two innocent persons must suffer a loss, following the payment of money to an agent, he who clothes the agent with authority to receive, must himself bear the loss.

13. Under such circumstances the payor cannot be held liable for the loss, without averment and proof either that he knew or had reason to believe the principal would not be able to recover the money, if it was paid to the agent.

Argued January 16, 1922.   Appeal, No. 80, Jan. T., 1922, by defendant, from judgment of C. P. Phila. Co., June T., 1920, No. 7056, on verdict for plaintiff, in case of I. M. Gurdus to use of Herman Solnicki v. Philadelphia National Bank.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.   Affirmed.

Assumpsit for value of merchandise.   Before ROGERS, J. The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff, for $125,000.   Defendant appealed.

*Errors assigned,* inter alia, were (1) refusal of continuance;  (2-10) various rulings and instructions as appear by the opinion of the Supreme Court, quoting record.

*George Wharton Pepper,* with him *W. B. Bodine, Jr.,* for appellant.—The payment to the Industrial Bank, if made, did not have the legal effect of a payment to the Philadelphia Bank, because there can be no agency to receive without a liability to account, and there can be no liability to account when no government exists which will or can enforce such liability: New York Life Ins. Co. v. Statham, 93 U. S. 24.

As the Industrial Bank could not have obtained the bills of lading without first remitting to the Philadelphia Bank, Solnicki's agreement to receive the bills from the Industrial Bank made remittance to the Philadelphia Bank a condition of the resale.

Gurdus, on payment of the draft, could not compel the Philadelphia Bank to account for collateral held by it except to himself or a single assignee: Mandeville v. Welch, 5 Wheat. 277.

The fall of the Kerensky government on November 7, 1917, prior to the alleged payment in Moscow, and the absence of all recognition of the Bolshevik Republic by the United States government and the facts that the

latter has never established international relations with any government in Russia since that date, and that at no time since had it been possible to obtain a passport from this government for one to go to Russia, are matters of which the court should take judicial notice: Oetjen v. Leather Co., 246 U. S. 297; U. S. v. Hamburg Am. Co., 239 U. S. 466; Jones v. U. S., 137 U. S. 215.

*Morris Wolf,* with him *Murdoch Kendrick,* for appellee.—A man who acts through a person whom he has authorized to act for him, in a way in which that person was authorized to act, acquires the same rights and is subject to the same liabilities as if he had acted in that way himself.

There is such identity in the payment of the money to the agent that the principal is liable in such cases for money had and received, even though it never came into his hands: Comly v. M'Bride, 4 Whart. 526; DeTurck v. Matz, 180 Pa. 347.

The proposition that the change of the form of the government of Russia operated in and of itself to annul existing contract relations between private citizens of Russia and private citizens of other countries, is one entirely unsupported by authority: Torlade v. Barrozo, 1 Miles 366.

As a matter of fact, even the declaration of war does not, ipso facto, terminate all kinds of agency: Williams v. Paine, 169 U. S. 55.

The question of granting or refusing a continuance is within the discretion of the trial court, whose action therein will be reversed only for abuse of that discretion: Bank v. Guarantee, etc., Co., 238 Pa. 75; Peoples Nat. Bank v. Hazard, 231 Pa. 552; Davidson v. Davidson, 262 Pa. 520.

OPINION BY MR. JUSTICE SIMPSON, February 13, 1922:
Plaintiff sued for the value of certain glazed kid, which he alleged had belonged to him, but defendant had

sold and retained the proceeds; he recovered a verdict for the amount realized at the sale, with interest, and from the judgment entered thereon defendant appeals.

At the trial of the case, following the practice approved by us in Buehler v. United States Fashion Plate Co., 269 Pa. 428, plaintiff offered, and there was admitted in evidence, certain of the averments of the statement of claim, which had not been denied by the affidavit of defense, and these may be summarized as follows: John R. Evans & Co., sold to the legal plaintiff, I. M. Gurdus, sixty-two cases of glazed kid, the former agreeing to deliver it to the latter in Philadelphia, upon payment being made therefor; for the purpose of obtaining the purchase price Evans & Co. drew its draft upon Gurdus, at Moscow, Russia, defendant purchased it and the warehouse receipt for the kid, and forwarded the draft to its correspondent, the Moscow Industrial Bank of Moscow, Russia; accompanied by its, defendant's, non-negotiable certificate to the effect that against the said draft it held the warehouse receipt, which it would deliver to the purchaser of the kid upon payment of the draft, and authorized its said agent to collect the amount of the draft from Gurdus, for the account of defendant, and upon its payment to deliver the draft and certificate to him; Gurdus sold his interest in the agreement of sale and kid to Herman Solnicki, the use-plaintiff; upon the receipt of the draft by the Moscow Industrial Bank it demanded payment thereof from Gurdus, use-plaintiff paid to it the full amount due, this the bank accepted, as agent for defendant, and delivered to use-plaintiff the draft and a receipt in full for the payment, as it had been directed by defendant to do; thereafter use-plaintiff settled in full with Gurdus, who from that time had no interest in the agreement of sale or the kid; and use-plaintiff demanded and defendant refused to deliver the warehouse receipt to him.

Under the facts thus conclusively established (Gillespie v. Pennsylvania Co., 272 Pa. 393), it is clear plaintiff

was entitled to recover the value of the kid, unless there were other objections to his claim. Indeed, this is not now disputed; but defendant avers there are three reasons, arising out of facts not contradicting those above stated, why the suit cannot be successfully maintained, at least at the present time.

Its first contention is that the court below erred in refusing to grant its motion for a continuance until the return of certain letters rogatory, which it had forwarded to Russia to take the testimony of twenty witnesses supposed to be living there and acquainted with facts important to the defense. The single question for us on this phase of the case is, Did the court below abuse its discretion in refusing the motion? First National Bank v. Title Guarantee and Surety Co., 238 Pa. 75; Davidson v. Davidson, 262 Pa. 520. We cannot say it did. No attempt was made to comply with the rule of court, requiring a party seeking a continuance to state by affidavit what it expects to prove by the witnesses, in order that his opponent may have an opportunity to admit what they would say, if present, and thus avoid the supposed necessity for continuing the case. So, also, the application was objectionable because asking for a continuance for an indefinite time. The proper course to pursue would have been to ask it for a definite time, with leave to renew the application; but this was not done, and though the court below might well have exercised its discretion, in view of the situation believed to exist in Russia, and granted the continuance for a fixed period, it was not obliged to do more than decide the application made, and hence we cannot say it abused its discretion, especially as the letters rogatory had been outstanding nearly five months, and nothing had been heard from them during that time.

Subsequently, on July 27, 1921, a communication was received, purporting to come from the "Chief of the Department of Economy and Law" of the Russian Socialist Federated Soviet Republic, in which it is stated that

letters rogatory are executed in a foreign country only because of "international agreements concluded between the two countries, with the aim of regulating such proceedings," and that since there was no agreement between the Soviet Republic and this government, we "regret to state that the request of your court cannot be fulfilled." Of course this communication could have had no effect on the application for a continuance, since it was not received until after the refusal thereof, and hence we cannot take it into account in determining whether or not the discretion of the court below was properly exercised. We think, however, it would not have helped appellant; it rather confirms the belief that the evidence desired could not have been there obtained by letters rogatory, until long after a reasonable time for their execution.

Defendant says, in the next place, that the draft, as forwarded to its correspondent in Moscow, included the purchase price not only of the sixty-two cases of kid, but also of sixty-four others, which had been assigned by Gurdus to use-plaintiff and by the latter to one Heller, and the accompanying certificate also included both transactions; that use-plaintiff was not entitled to more than the sixty-two cases and Heller to the balance, and the right of action cannot thus be split without defendant's consent. These averments of fact are true, but are only a part of the applicable facts; and moreover the legal conclusion stated is not accurate. There were two distinct sales of two separate invoices of kid, at different prices and at different times, and they were held by the warehouse in separate parcels, each subject to delivery on the surrender of its individual warehouse receipt. That Evans & Co., for its convenience, drew the draft for the two together and defendant, for its convenience, sent but one certificate covering the two warehouse receipts, could not defeat Gurdus's right to separately pay the purchase price of each invoice and then obtain the proper warehouse receipt therefor, or to as-

sign his right in that one to use-plaintiff. Indeed, if there had been but one contract and one warehouse receipt, defendant could not be heard to object to the division, at least so long as it or its agent was paid the whole amount due at one time, and it was only required to deliver the warehouse receipt, if single, into the joint custody of all those interested (Caldwell v. Hartupee, 70 Pa. 74); and even this latter right, if it was such, defendant lost when it delivered the warehouse receipts and itself obtained and sold the kid. It is idle to say that under the arrangement made by the parties with the Moscow Industrial Bank, the latter was to obtain the warehouse receipts from defendant and deliver them to Gurdus. Defendant, by surrendering them to the warehouse company and receiving and selling the kid, by its own act has disabled itself from carrying out its agent's agreement, as well as from doing that which it says was the only thing it was required to do. After this occurred, use-plaintiff had no other remedy than to recover damages for the value of the kid to which it proved it was entitled. Moreover, if defendant's claim was in all other respects correct, it would not be a defense to this suit, but only to a suit for the value of the other sixty-four cases: Stradley v. Bath Portland Cement Co., 228 Pa. 108. As we have shown, however, it will not be available even there.

Defendant's final claim is that the court below should have taken judicial notice of the fact that the Kerensky government,—which was in power in Russia at the time the leather was sold and had been recognized by this government,—was overthrown on November 7, 1918, by the Soviet Republic, which was not recognized by us; the change resulting, at some time thereafter, in so paralyzing the judiciary of Russia as to hinder defendant from forcing its correspondent to account for the money paid, though our government is not shown to have recognized that status as existing. Under such circumstances no court could judicially notice this alleged situation. The evidence shows that up to the time the money was paid,

on December 4, 1918, the Soviet Republic had not interfered with the operations of the Moscow Industrial Bank. About March 1, 1919, it took over the administration of the banks in Russia, and much later, at a date not fixed by the evidence, they were nationalized. Moreover, it does not appear at either of these dates, how much, if any, of the money paid for the kid was still in the running account of defendant with the Moscow Industrial Bank, to the credit of which defendant directed it to be deposited. After this was done, it drew a number of checks upon the account, but in whose favor they were drawn, the amount thereof, and whether or not they were paid, is not shown. The two former matters it could have proved, the latter possibly not; but no evidence was produced touching any of them.

Assuming, but not admitting, that the court could take judicial notice of the fall of the Kerensky government and of the control obtained by the Soviet Republic, and that, by reason thereof, the Moscow Industrial Bank would not be able to honor defendant's checks drawn against its account, it must necessarily follow also that defendant was bound to take notice of these facts and act accordingly. A court does not take judicial notice of such matters because it has some superior knowledge in regard thereto, but only because they are so certainly true and so well known that everybody is supposed to take notice thereof: 15 R. C. L. 1058, 9. This being so, defendant knew of the facts in relation to the fall of the one government and the control by the other, as early as November 7, 1917, and it could and should have attempted to recall the agency of the Moscow Industrial Bank or notify it not to accept and plaintiff not to pay the draft. It did none of these things; on the contrary, by drawing checks on the account after that date, it affirmed plaintiff's right to pay the draft and receive it and the certificate, unless indeed defendant so acted in ignorance of the situation in Russia, and if it was ignorant, then the facts were not so certain and well known as to cause either the court or plaintiff to take notice thereof; hence

the latter would not be bound unless shown to have otherwise acquired knowledge on the subject, and of this no proof was attempted.

Relying upon its erroneous conclusion that the court below should have taken judicial notice of the alleged facts above set forth, appellant thus states its supposed defense growing thereout: "The payment to the Moscow Industrial Bank, if made, did not have the legal effect of a payment to the Philadelphia National Bank; because there can be no agency to receive without a liability to account; and there can be no liability to account when no government exists which will or can enforce such liability." Aside from that which has already been said, this novel and remarkable contention, if otherwise sustainable, would still have to be overruled because it overlooks the difference between a "liability to account" and an opportunity to compel an accounting. It would be a strange conclusion, involving little less than a travesty of justice, if it were held where an agent, authorized to receive payment of an account, in fact receives it by virtue of the authority thus given, that subsequent difficulties, which operated to prevent the principal from collecting, from its agent, the money thus paid, but for which the innocent payor is not responsible and of which he had no knowledge, should result in his bearing the loss, rather than the principal who clothed the agent with authority. This would be in direct violation of the fundamental rule that if one of two innocent parties must suffer, he who clothes the agent with authority to receive, must himself bear the loss: Penna. Railroad Company's App., 86 Pa. 80; Wolfgang v. Shirley, 239 Pa. 408. To affect plaintiff, defendant would have had to prove, not only that Gurdus knew of the fall of the Kerensky government, but also at least that he had reason to believe the money would be lost to defendant if he paid it to the Moscow Industrial Bank; of this, however, there is nothing in the pleadings or the proofs.

The judgment of the court below is affirmed.