Gehringer *v.* Real Estate-Land Title and Trust Company, Appellant.

Argued January 14, 1936.   Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*Boyd Lee Spahr,* of *Ballard, Spahr, Andrews & Ingersoll,* with him *Dudley T. Easby, Jr.,* for appellant.

*Isaac A. Pennypacker,* with him *James A. Montgomery, Jr.,* and *Pepper, Bodine, Stockes & Schoch,* for appellee.

Opinion by Mr. Justice Linn, March 30, 1936:

Defendant appeals from a decree of specific performance in a suit brought to require certain things to be done pursuant to contracts alleged to have been made by plaintiff, defendant and Helen Penrose Hodge. The facts have been agreed to. It is immaterial, in the view that we must take of the transaction, that Mrs. Hodge, the buyer, was not made a party to the proceeding.

By writing, July 10, 1931, plaintiff agreed to sell to Mrs. Hodge for $40,000, certain real estate, $4,000 payable in cash (which was paid) on that day, $26,000 cash at final settlement, "the balance . . . to be represented by a purchase money first mortgage." A real estate broker, representing Mrs. Hodge, applied to defendant for a policy of title insurance against encumbrances. Later the same broker, representing plaintiff, applied to

defendant for mortgage insurance in $10,000 against encumbrances and also "arranged with the defendant for settlement to be held between the plaintiff . . ." and Mrs. Hodge, October 5, 1931, at 11 a. m. At the time specified, both buyer and seller met at defendant's office for settlement "together with the duly authorized settlement officer of the defendant." An account was stated showing that "with certain adjustments for taxes and insurance, and that after deduction of defendant's proper charges and a commission to [the real estate broker] the plaintiff was entitled to the sum of $26,-237.12" out of a total balance of $36,639.44 payable, of which $10,000 was to remain secured by first mortgage. The seller produced a deed for the premises; the buyer produced the mortgage for $10,000. Though the contract required a payment of $26,000 in cash, Mrs. Hodge did not produce cash; instead, she offered a check drawn on the Franklin Trust Company by her husband, which he had had certified. In addition, and to complete the payment required to make the adjustments, to pay the broker's commission and defendant's insurance charges, Mrs. Hodge offered another check for $39.44 on the same bank also drawn by her husband.

At this point, what was the situation? Both buyer and seller had separately applied to defendant for title insurance and, pursuant to the applications, defendant was prepared to issue its policies; in other words, to accept the proposals severally made to it by buyer and seller. The calculations had been made and approved showing the sums payable and to whom. Though bound to supply $26,000 cash, Mrs. Hodge came unprepared to do so and tendered the checks, prima facie, conditional payment. The seller might have rejected them and insisted on the cash which Mrs. Hodge had agreed to pay at that moment; instead, she acquiesced in Mrs. Hodge's variation of the contract. Defendant was not a party to the contract of sale and, as respects the purchase price, had no obligation except to distribute it in the medium

in which it was tendered by the buyer and accepted by the seller, and in amount as they should direct. There is no finding (and on the record none could be supported) that the checks were received as absolute payment. We have, then, conditional payment accepted by the seller, as part of the settlement. "Furthermore, in the absence of circumstances indicating a contrary intention, a cashier's check accepted from a debtor is not an absolute but merely a conditional payment, defeasible upon nonpayment or dishonor": *Gerrard v. Tradesmen's Bank*, 318 Pa. 100, 103, 177 A. 760. See, also, *Phila. v. Stewart*, 195 Pa. 309, 314, 45 A. 1056.[1]

The deed and the mortgage have also been produced and placed in the defendant's custody for purpose of delivery and recording, common practice in such settlements, a step taken by a title insurance company preparatory to issuing its policy of title insurance.[2]

Conditional payment having been made and acquiesced in by the seller, the adjustments having been calculated, the settlement sheet showing the account having been agreed to and the title papers having been produced, it remained for the defendant to distribute what had been paid, as stated, to those shown by the settlement sheet to be entitled. But, as conditional payment only had been made, its distribution by defendant, in that respect acting for both buyer and seller, must necessarily also have been conditional, contingent on the parties making good what one had offered and the other

---

[1] As Mr. Hodge, the drawer, procured the certification of the check, he was not discharged. See annotations to section 188 (Act of May 16, 1901, P. L. 194, 56 PS section 476) in Brannan: *Negotiable Instruments Law* (5th ed.), page 1061.

[2] The 6th paragraph of the agreement of facts states that at the settlement "Plaintiff then delivered to defendant her deed to the premises in quesion for recording and delivery to the said Helen Penrose Hodge, and at the same time the said Helen Penrose Hodge delivered to the defendant the $10,000 purchase-money mortgage before referred to for recording and delivery to the plaintiff."

had received instead of cash.[3] Accordingly defendant's clerk drew and delivered to plaintiff a check or order on itself payable to plaintiff in the sum of $26,237.12 (made up as stated above). This check specified on its face that it was a "settlement check"; it contained the number identifying it with the particular settlement involved and specified that it was "Payable through the Philadelphia Clearing House.[4] By taking the checks and making the conditional distribution, defendant of course impliedly agreed to make timely presentation of the checks and, it is agreed, that in this respect defendant omitted no duty.[5]

Plaintiff does not suggest that defendant, by any guaranty, made absolute what would otherwise have been conditional. Her position is that defendant should be held liable on the ground that she would not have given up her deed if she had not received defendant's check; that the consideration for defendant's promise to pay the amount due her by the buyer was the detriment incurred by her waiver of the right to receive cash and the manual delivery of her deed to defendant. Even if we should disregard the effect of the conditional payment by Mrs. Hodge, plaintiff's position would be without support; the agreement contains no statement of fact that the alleged detriments were incurred in reliance on defendant's promise to pay; without such agreement her contention must fail. On the other hand, the only consideration which defendant received was Mrs. Hodge's two checks; as this consideration failed, defendant was discharged.

---

[3] The court in banc found that defendant's clerk "delivered to the plaintiff the defendant's check drawn on the faith that the certified check delivered to them by the vendee would be paid."

[4] This condition gave opportunity to stop payment if the purchaser's checks were dishonored on presentation.

[5] The court found that "defendant was not negligent in attempting to collect the checks given it by the vendee."

We come, then, to the remainder of the transaction. On the same day on which the buyer's checks were received, defendant put them in course of collection; when presented to the drawee bank next morning, it was found that, on the preceding midnight, the bank had been taken over, as insolvent, by the secretary of banking. Defendant then stopped payment on its distribution check, and immediately advised both buyer and seller that, on the dishonor of Mr. Hodge's checks, "in reliance on the collection of which our settlement check was issued to" plaintiff, there had been failure of consideration, in consequence of which defendant had stopped payment of its check to plaintiff, that defendant had not recorded the deed and the purchase-money mortgage, and that it would not issue the insurance policies, or record the papers, unless the buyer made good the amount payable.

It is obvious from the statement of the facts, considered either from the viewpoint of defendant or of plaintiff, that the consideration failed and that defendant was excused from further performance until the parties supplied it with something to distribute.

The learned court below was of opinion that (1) defendant was estopped and (2) in any event, as we understand it, defendant had no right to stop payment of the settlement check.

(1) There is no ground for estoppel. In *Fedas v. Ins. Co. of Pa.*, 300 Pa. 555, 560, 151 A. 285, it was said: "An estoppel exists where one by his words or conduct causes another to believe in the existence of a state of facts, inducing reliance thereon in some act of mutual concern, and the inducing person wishes to assert, prejudicially, facts in opposition to those first held out to be true, on which action was taken." Defendant did nothing that could mislead buyer or seller; the record would not support a holding that it did. Possession of the premises had not changed. The deed and mortgage were deposited with defendant for specified purposes and, on

failure of the consideration, remained as deposited, subject, as respects defendant, to the order of the parties to the sale. Buyer and seller were present and were parties to the conditional payment; it was their settlement; they created and were familiar with all the attending circumstances in the light of which they dealt.

(2) The record furnishes no support for the position that defendant could not stop payment; the settlement check remained in the hands of the payee to whom it was issued in distribution "on the faith that the certified check delivered to them by the vendee would be paid." The consideration for which it was issued failed, in circumstances, as has been stated, which discharged defendant.[6]

For the reasons stated above we must reject appellee's contention that appellant's settlement check "represented a sale of the appellant's own credit to appellee, the consideration for which was appellee's delivery of her deed." The facts do not support it; the parties have not agreed that appellant's checks were taken as absolute payment; nor is there anything to support the view that the consideration for taking them as absolute payment was "appellee's delivery of her deed." Among the facts agreed to is that, at the settlement, plaintiff delivered her deed to defendant "for recording and delivery to" the buyer who "delivered to the defendant [her] . . . mortgage . . . for recording and delivery to the plaintiff"; both those so-called deliveries were necessarily made to defendant in the course of the parties' settlement, whereby each party, for purposes of title insurance, constituted defendant her agent to make, not manual, but legal delivery (cf. *Eaton v. New York Life Ins. Co.,* 315 Pa. 68, 80, 172 A. 121). There is no evidence or agreement that plaintiff delivered her deed in reliance on defendant's promise to pay.

---

[6] See *Kinder v. Fisher's Nat. Bank,* 93 Ind. App. 213, 177 N. E. 904.

The decree is reversed and the record is remitted with instructions to dismiss the bill at appellee's costs.

DISSENTING OPINION BY MR. JUSTICE MAXEY:

In my judgment, the majority opinion omits a vital fact, to wit, that the $26,000 certified check which was delivered by Mrs. Hodge, the purchaser, was made payable not to Mrs. Gehringer, the seller, but to the title company, the insurer of the title. With this fact present, the majority's conclusion rests upon an unsound premise, namely, that the seller "acquiesced in the variation of the contract" to demand the cash *from the buyer*. She did not acquiesce in the variation of the contract to demand *from the buyer* the cash. If the check was made payable to her and she accepted it from the buyer, there would then be a clear variation. But the title company, to which it was made payable, accepted it. It, as the insurer, acquiesced in the variation of the terms relating to the manner of payment. It could have demanded the cash, but instead relied on certification by the Franklin Trust Company of the Hodge check. When the settlement was concluded, the seller had a right to demand the cash from the title company, the party concluding the settlement, but she waived this in consideration of the receipt by her of the title company's own check. There is not a scintilla of evidence or even a hint that anybody else's check was ever offered to her, and the fact that the Hodge check was payable to the title company precludes a conclusion that this check could have been offered to the seller. How then could it have been. said that she acquiesced in the payment by a check payable *alone* to the title company. She did all she was required to do to complete the agreement of sale. She delivered her deed to the title company at the request of the purchaser, for recording. She received from the same company her mortgage from the purchaser, for recording. She received the title company's check for the consummation of the agreement of sale. She had a right

to rely upon this check as the completion of the agreement. We so held in *Gurdus v. Phila. Nat. Bank,* 273 Pa. 110, 116 A. 672. It is true that the certified check payable to the title company was legally a "conditional payment," but not "a conditional payment accepted by the seller as part of the settlement," but a conditional payment accepted by the title company to which alone it was payable, for which it must seek its redress from its principal, who delivered the check to it.

To conclude that the title company was not estopped, because here there was no conduct upon the part of the title company, when it delivered its check to the seller, as part of the purchase price, to cause her "to believe in the existence of a state of facts," namely that the title company's perfectly valid check would be paid on demand, and thereby induce the seller relying thereon that the agreement of sale was fully consummated and that she need not now demand her cash, is unwarranted. Clearly from such facts the law will presume that the plaintiff delivered her deed in reliance on defendant's promise to pay.

I think this matter was correctly adjudicated by Judge BARNETT, specially presiding in the court below, when he said: "The defendant for the purposes of the settlement was the voluntary and compensated agent of both the plaintiff and her vendee, Mrs. Hodge. The delivery of the plaintiff's deed to it was a delivery to Mrs. Hodge. The delivery of Mrs. Hodge's mortgage to it was a delivery to the plaintiff. The larger part of the consideration for her deed was the sum of $26,000 which, by the provision of the agreement of sale, the plaintiff was entitled to receive in cash. If it had been so paid the plaintiff would not now be in court. *It was not she, but the defendant who waived the right to payment in money and accepted instead the Hodge checks* [italics supplied]. . . . It was not the plaintiff, but the defendant, who, having accepted the checks in lieu of cash, failed to exchange them immediately for money. The

defendant must sustain the loss which it had the double opportunity to avoid but which it prevented the plaintiff from avoiding by handing her its own check upon itself, which the plaintiff accepted as money."

There is no question that appellee delivered the deed to her property to appellant as agent of the buyer, following the delivery to appellee of appellant's check. The deed had passed beyond her control. She could not have successfully demanded its return. Appellee could have gone to the bank on which the appellant's check was drawn, before the close of the banking hours on the day of settlement, and cashed it. Her title to the proceeds of that check would be incontestible. The delivery of the deed to appellant in exchange for appellant's check and undertaking to record and deliver the instruments of title that would give appellee a purchase-money mortgage on the land was a consideration satisfying all legal requirements. The entire transaction was closed when the parties left the place of settlement. No one was in a position to "back out." The deal was consummated. Suppose the appellant had been given cash instead of checks and had been robbed of the cash or had lost it immediately after leaving the settlement office, would anyone contend that thereby appellant acquired the right to stop payment on its check? Appellant in accepting the buyer's checks did not anticipate that they would prove to be uncollectible any more than it would have anticipated, in the supposed case, that it would be robbed of the cash delivered to it. But that was a chance it took and it alone should bear the consequences of the hazard. Mrs. Hodge, the purchaser of the property, had given the appellant a certified check for $26,600 drawn to appellant's order and another check, uncertified, for $39.44, also drawn to appellant's order. These two checks represented the total amount payable by the purchaser, as the balance of the purchase money, except for adjustments of taxes and insurance. It was the misfortune of appellant that it accepted from the buyer in

lieu of cash a large check, properly certified but nevertheless subject to the hazard (not uncommon in these unusual times) that the bank which had certified it might be closed before the check could be cashed. This happened within thirteen hours after the settlement. The appellee was in no way responsible for this fact. She had fully discharged her part of the bargain and had accepted appellant's check in payment of the property she had parted with. When appellant found that the certified check which it had accepted, was not paid by reason of the closing of the bank on which it was drawn, it stopped payment on its own check to the appellee. This it had neither a legal nor a moral right to do. It had taken Mrs. Hodge's checks in lieu of the cash it could have demanded. When it did not demand cash, it took the risk of the nonpayment of the checks.

The majority opinion contains the following statement: "We have, then, conditional payment accepted by the seller, as part of the settlement. 'Furthermore, in the absence of circumstances indicating a contrary intention, a cashier's check accepted from a debtor is not an absolute but merely a conditional payment, defeasible upon nonpayment or dishonor': *Gerrard v. Tradesmen's Bank,* 318 Pa. 100, 103, 177 A. 760. See also *Phila. v. Stewart,* 195 Pa. 309, 314, 45 A. 1056."

The above statement is wholly inapplicable as affecting appellee's rights here. She was the *seller.* She accepted *not* conditionally, *but absolutely,* appellant's check. She is not trying to recall her deed because appellant stopped payment of its check. She fully carried out her part of the deal by parting with her property and demands that appellant make good on its check, which she accepted in payment for her property. The title company's check was not rejected by the payee (the vendor of the property) for failure of consideration on the part of the maker of the check or for anything else, and therefore the principle cited in the majority opinion has no applicability. The facts here are "just the other

way around" from a state of facts which would make the above principle applicable. An examination of the two cases cited in the above excerpt from the majority opinion discloses that they have no application whatever to such a state of facts as we have here. There is no "conditional payment" in this case. A case of conditional payment arises where one parts with real or personal property and accepts another's check for it. If A sells his property to B and accepts B's check in payment and · B's check is dishonored, there is in fact a fraud perpetrated on A, and A can demand his property back. But in the instant case the seller of the property perpetrated no fraud on the title company. She delivered her property and took the company's check in good faith. All she demands is that the company make good on its check. It is no fault of hers that the checks which the title company took *from the buyer* proved to be uncollectible. That unfortunate fact gives the title company a right of action against the maker of that check, not against Mrs. Gehringer, who parted with her property on the faith of the goodness of the title company's check.

What I think is a basic error in appellant's position (and in the majority opinion) is the assumption that when the title company delivered its check to Mrs. Gehringer, it annexed a condition to it. There was certainly no such *expressed* condition, and such a condition could easily have been expressed. The title company could have exacted from Mrs. Gehringer a pledge that she would not cash its check until the Hodge check had cleared. It did nothing of the kind. It could have withheld its check to the seller until the buyer's check had cleared. It did not choose to do so. There is nothing in the agreement and stipulation of facts indicating anything "conditional" about appellant's check to Mrs. Gehringer. When the parties left the settlement office, the transaction was closed. The appellant had the buyer's checks, and also Mrs. Gehringer's deed for delivery to the buyer and Mrs. Gehringer had appellant's check.

When the buyer's checks proved to be uncollectible, the title company and not Mrs. Gehringer should bear the loss. The company could have demanded cash from the buyer, but it did not. It could have protected itself in various ways, but it failed to do so. Its misplaced faith in a third person's check (i. e., a mere piece of paper of no *intrinsic* value) resulted in a loss. Who should bear that loss? Certainly not the appellee. She did nothing to cause it. She was not relying on the buyer's checks but on the appellant's check, when she parted with her property. She had made no representations to the appellant in respect to the buyer's checks. The appellant dealt with "its eyes open." It should have protected itself *absolutely,* as it could have done, not merely *relatively* by taking a certified check. Ordinarily certified checks are good, but they are not *necessarily* good. This one proved not to be good.

To visit this loss on appellant and not on appellee, I do not think it necessary even to invoke the principle (as did the court below) that when one of two innocent persons must suffer loss for the default of a third person, the loss should fall on the one whose act facilitated the loss, or, as it is sometimes expressed, "made the loss possible." (See *Fifth Street B. & L. Assn. v. Kornfeld,* 315 Pa. 406, 414, 172 A. 703.) Appellee breached no duty in this transaction. No act or omission on her part was the cause of the loss which must be borne by someone. Appellant's failure to demand the cash it was entitled to demand and secure, and its reliance on the buyer's check in lieu of cash, made this loss possible. Appellant then should bear the loss. The above principle justifies the conclusion reached by the court below, but even if there was no such principle in the law, the same conclusion ought to be reached on the facts. The seller parted with her property in reliance on appellant's check. Appellant should make that check good. It should not be permitted to impose the loss arising from its misplaced trust in the buyer's checks, on one who accepted *its* check

in complete trustfulness and parted with valuable property because of that trustfulness. To permit this is to give judicial sanction (so at least it appears to me) to the doctrine that "two wrongs make a right."

I would affirm the decree of the court below.